**WOODARD v. COLLINS et al.***

**No. 5407.**

Court of Appeal of Louisiana.
Second Circuit.

Feb. 5, 1937.

*Rehearing denied March 1, 1937.

208

J. Fair Hardin, of Shreveport, for appellants.

Coleman & Miazza, of Shreveport, for appellee.

TALIAFERRO, Judge.

Plaintiff sues his employer, T. E. Collins, and his insurer, the Southern Underwriters of Houston, Tex., for compensation at the rate of $20 per week for the maximum period of 400 weeks; and for medical, surgical, and hospital expenses. He alleges that he is totally and permanently disabled as the direct consequence of being injured while discharging the duties of his employment on February 13, 1936. The controverted issues, through the frankness of defendants' counsel, have been narrowed to two, namely: (1) The extent of plaintiff's present disability; and (2) did the trauma of February 13, 1936, directly or indirectly superinduce conditions which produced such disability? Defendants now concede that plaintiff experienced an accident while performing the duties of his employment; that the employer is engaged in a hazardous business; and that if plaintiff is entitled to any compensation at all, on the basis of total disability, the rate should be $20 per week.

This appeal is prosecuted from a judgment for plaintiff for compensation as by him prayed for. His demand in other respects was rejected.

Plaintiff for several years operated large trucks for his employer, used principally to transport heavy pieces of oilfield machinery and drilling equipment.

He was injured by the falling, for a distance of at least two feet, of an iron I-beam, 8 feet long, weighing about 600 pounds. The beam struck the rear part of the head and the upper portion of his back and shoulder, and rolled off. A deep cut was inflicted about the occipital bone which bled profusely. The force of the blow knocked him to the ground on his back and the concussion from the blow rendered him unconscious. He was carried from the scene of injury to a physician at Rodessa, La., given first aid, and was then rushed to a sanitarium in the city of Shreveport, where he remained and was treated for thirteen days. He was finally discharged from treatment some weeks thereafter. The wound had healed and it was thought he had fully recovered from the trauma. The record does not disclose when he regained consciousness. He was in that condition when he arrived at the sanitarium. While there, he complained continuously of pains and aches in his head and the small part of the back.

The record is replete with evidence of a convincing character as regards the extent and nature of the disability which now affects the plaintiff. His inability to perform manual labor and drive heavy trucks, engaged in loading and unloading weighty objects, the only work he is competent to perform, is clearly established. Defendants' doctors do not dissent from this conclusion and are unwilling to venture a professional prediction as to the duration of the disability. This leaves for disposition the question whether such disability was superinduced by and has causal connection with the injury plaintiff experienced in the aforesaid accident. The lower court resolved this issue in favor of plaintiff.

When injured plaintiff was afflicted with several malignant diseases, including syphilis, arthritis of the vertebræ of the lumbar back, and pyorrhea. It is defendants' contention that his present disability may be solely ascribed to the existence of those diseases, uninfluenced by said injuries, while he contends that the direct effect of the accident and resultant injury was to enable these diseases to gain ascendancy on account of his reduced power of resistance, and therefrom resulted the degree of disability now present. In other words, his position is that these diseases were dormant, inactive, at the time of and prior to the accident, but were

aroused, activated, and aided by the effect of the trauma, and gained the mastery.

The testimony well establishes that plaintiff, now 46 years of age, when injured and for many years prior thereto, excepting for a brief period spent in a hospital in 1933, had the appearance of being rather strong and vigorous. He was able to load and unload with heavy objects, or assist therein, large trucks common in oil-field activities, and to drive them after being thus loaded. He was not heard to complain of any pain or aches during these years, and his true physical condition seems to have been unknown to those with whom he daily labored. He was regarded as a strong man by his fellow workmen.

Four physicians testified in the case, one on behalf of plaintiff and three for defendants. Dr. Thomas J. Fleming, for plaintiff, was positive in the opinion that the traumatic injury of February 13, 1936, directly activated and caused the flaring up of plaintiff's dormant diseases and this reaction produced his present disability. Dr. W. S. Harmon, who treated him while in the sanitarium, was unable to discern any connection between the disability and the trauma, but would not positively say there was none. He thought the diseases would have ultimately brought about a condition of disability to do heavy work. He admitted that the blow which felled plaintiff to the ground could have caused a strain upon the lower part of his back. Dr. Ledoux examined plaintiff nearly two months after he was injured. He was then complaining of backaches. The burden of his testimony is reflected from his answers to the two following questions propounded by defendants' counsel:

"Q. Is there anyway that you can say positively that there was a causal connection between the lick on the head and the pain and stiffness of the back?

"A. Well, the lick on the head described may not only have injured the head, but might have made the pains in the back worse or possibly precipitated it.

"Q. Or quite possible could have been the natural growth of the condition preexisting?

"A. I do not know that I could say that. It is probable that it would have been slower, if he had not received the injury, but it is entirely probable that he could have had that without the injury."

This testimony does no violence to plaintiff's theory of the cause of his disability, but, on the contrary, supports it.

Dr. Stamper stated that the trauma would not superinduce unusual activity of syphilis, but further stated:

"Q. Would not cause it?

"A. No, sir, but if you have an arthritis condition and have an excessive load or strain on the bony anatomy, might be some injury that would help to flare up the preexisting arthritis condition. * * *

"Q. Then you admit that the trauma aggravated or accelerated this condition?

"A. No, I do not admit that the trauma had anything to do, except from the personal history. We have no physical findings to indicate trauma, but we are respecting his personal history."

The burden of defendants' physicians' testimony as a whole is that they are unable to say definitely that the trauma set in motion or activated latent diseases which brought about plaintiff's disability, nor are they able to say that it did not do so, but do say that it possibly could have worked such a result, and finally that the diseases would have eventually caused the disability.

■ Due to the existence of the several serious diseases of his body, plaintiff's outward appearance and demonstrations of physical ability really belied his true physical condition. A collapse was certain to occur ultimately, but no one could tell when the climaxic time would come. It might have been a few months or several years away; yet he was able to carry on in the pursuit of heavy work to the satisfaction of his employer. The blow he received would probably not have resulted in total disability if he had been physically sound, but it requires no stretch of the imagination to conclude that such a blow to the body of one in his physical condition would set latent diseases to work or aggravate arthritic conditions to the extent that disability is soon brought about. While it is probably true that the trauma had little immediate effect on the syphilitic condition, yet we feel sure it did have a serious and unfavorable effect upon that part of the spinal column affected by arthritis. In falling on his back, unconscious, it seems to us but a natural consequence for the already diseased vertebræ to be strained and their condition aggravated. We are convinced this is what

happened; and it is not improbable that thereafter other diseases contributed to the final result.

 In Anderson v. Louisiana Oil Refining Corporation, 16 La.App. 294, 134 So. 343, 344, we said:

"It is not necessary, in order to recover under the Employers' Liability Act, that the continued disability directly resulted from the injury. It is sufficient if the disability be the result of a condition arising from the injury, or that the injury be a contributing cause of the disability."

This well-recognized doctrine finds proper application to the facts of this case.

We are favored with well-written briefs on both sides of the case. Many adjudications are referred to and quoted from. Some are pertinent to the controlling principle of the present case, but, after all is said and done, the facts of each case of this character must determine the ultimate findings therein. Analogy is persuasive but not decisive. No good purpose would be promoted by citing, quoting from, or discussing the cases cited.

We are of the opinion that plaintiff is entitled to recover and, accordingly, the judgment in his favor is affirmed, with costs.