REGAN, Judge.
The plaintiff, John A. Schernbeck, filed this suit against the defendants, Lindy Sales Company, Inc., and its workmen’s compensation insurer, Argonaut Insurance Company, endeavoring to recover compensation in the amount of $35.00 per week for total and permanent disability, statutory damages for the defendant’s wilful failure to pay compensation, medical and incidental expenses, together with expert and attorney’s fees. The plaintiff asserted that his disability resulted from an injury to his neck incurred as the result of an automobile accident while in the course and scope of his employment by Lindy Sales Company, Inc.
The defendants answered and admitted that the plaintiff was injured in an automobile accident while in the course and scope of his employment with Lindy Sales Company, Inc., and that it had paid workmen’s compensation and medical expenses to him from the date of the accident through September 2, 1965. Defendants then explained that payment of compensation was terminated on the basis of medical advice which revealed that the plaintiff had fully recovered from the effects of the accident and that its refusal to pay was therefore not arbitrary or capricious.
Judgment was rendered in favor of the plaintiff in the amount of $1,750.00 and from that judgment, the plaintiff has prosecuted this appeal.
The record discloses that on January 16, 1964, the plaintiff was injured in an automobile accident, and as a result thereof, he incurred a mild concussion and severe strain of the structures of his cervical spine, superimposed on a preexisting condition of cervical osteoarthritis.
He was initially treated in the Ochsner Foundation Hospital emergency room where he was X-rayed and given sedation. Thereafter he was referred to Dr. Dean Echols, a neurologist, who diagnosed his injuries as a concussion and sprained neck. He prescribed muscle relaxants and then referred *744 the plaintiff to the Ochsner Orthopedic Department, where he was treated with cervical traction, heat, physical therapy and muscle relaxants. He also was advised to wear a surgical collar.
Dr. Harry Morris, who commenced treating the plaintiff about two months after the accident, testified that he had incurred a strain of the soft tissue of the neck but with adequate treatment, such as the plaintiff received, a patient with such injuries will in a normal course of time recover. He also explained that there were long existing degenerative changes of the plaintiff’s cervical area which were aggravated by the injury. However, in this doctor’s opinion, six months of treatment would probably have overcome any aggravation of his preexisting arthritic condition. He believed that the plaintiff’s limitation of motion resulted from osteoarthritis which existed prior to the time of the accident and was not a result thereof, and that on May 18, 1964, the plaintiff could have returned to his former occupation.
Dr. Hyman Soboloff commenced treating the plaintiff about July 6, 1964, at which time he found tightness and restriction of motion when he turned to the right side and tenseness in the trapezial muscle. Arthritic changes were present between the third and fourth cervical vertebrae, but no neurological problems or fractures were present. He recommended traction and physiotherapy. Dr. Soboloff was also of the opinion that the long periods of driving an automobile which the plaintiff’s occupation required would be objectionable for one in his condition since there is an inherent amount of tension experienced in the course of driving even without a neck injury, and fatigue is a frequent consequence thereof. He emphasized that the plaintiff had suffered a stroke caused by the blockage of an artery in his neck and as a result thereof, he was paralyzed on his left side. While physical therapy would have been helpful, it could not be administered until his physical condition was such that it would not aggravate his condition resulting from the stroke. He explained that when an accident imposes an injury on an arthritic spine, the time for recovery is almost twice as long, and had therapy continued, the plaintiff had a fairly good chance of overcoming practically all of his neck injuries within 4 to 8 weeks.
Dr. Soboloff pointed out that the arthritic condition did prolong recovery from the neck injury and that when he examined the plaintiff on August 30, 1965, his condition had worsened because of fibrosis which had developed in the muscles of his neck from nonuse, and that he could not perform the duties of a traveling salesman; however, had the stroke not intervened, he would have been able to return to his former occupation within 8 weeks time. Most significantly, he testified that the cause of the stroke was unrelated to the accident and that if the stroke had occurred without the accident, he would nevertheless have been unable to resume his occupation as a salesman.
Therefore, to summarize, the medical evidence clearly establishes that without the intervention of the stroke, the plaintiff would have recovered from his neck injury within 4 to 8 weeks after Dr. Soboloff’s examination of July 6, 1964. We are also convinced that the stroke of August 21, 1964, was in no way causally connected to the accident, nor did the accident contribute in any way thereto.
Despite the foregoing evidence, counsel for the plaintiff argues in effect that under the rationale of the workmen’s compensation statute and the jurisprudence interpretative thereof, the employer must accept the employee as he finds him. Counsel then pursues this argument to a conclusion which he believes is most favorable to him by asserting, as we understand it, that since the necessity for immobilization caused by the stroke prevented adequate treatment of the cervical strain, and since the stroke was the result of a preexisting degenerative condition of the plaintiff’s arteries which existed long before his employment by the de *745 fendant, the defendant must accept the plaintiff in this condition and should, therefore, pay him compensation for injuries emanating from the automobile accident.
Of course there exists much jurisprudential authority to the effect that an employer must accept an employee as he finds him, and cannot refuse compensation to one who is abnormally susceptible to disability because of a preexisting condition; however, the law is also well settled to the effect that the disability resulting from a preexisting condition must have been caused, aggravated, or contributed to by the accident forming the employee’s claim for workmen’s compensation benefits.[1]
In this case, it is quite obvious that the preexisting degenerative vascular condition of the plaintiff was not aggravated or in any way affected by the accident in which he was involved. On the contrary, it is evident that his stroke occurred independently of the accident, and was in no way casually related thereto. Consequently, the mere coincidental fact that the preexisting condition flared up at a time so as to interfere with treatment of the effects of the accidental injury does not entitle the plaintiff to recover for the extended period of disability caused thereby, when the medical evidence establishes that the plaintiff’s injury-caused symptoms would have been cured in a relatively short period of time if the stroke had not intervened.
We, of course, recognize that medicine is by its very nature an inexact science; however, the only substantial medical evidence in the record, to reiterate, is to the effect that the plaintiff’s injury would have been cured in a period of about 8 weeks dating from Dr. Soboloff’s examination of July 6, 1964. Therefore, he should only be entitled to recover workmen’s compensation for this period. In view of the fact that the plaintiff was paid compensation from the date of the accident until September 2, 1965, or for approximately a year more than that to which he was entitled, he is in no position to complain of an underpayment by the defendants or to claim penalties and attorney’s fees predicated upon an arbitrary and capricious refusal to pay.
Since the defendants did not answer the appeal requesting a reversal of the lower court’s judgment, we are judicially unable to consider reducing the award made to the plaintiff. Consequently, for the foregoing reasons, the judgment of the lower court is affirmed.
The costs of this appeal are to be paid by the plaintiff, and all other costs are to be paid by the defendants.
Affirmed.

. See for example Anderson v. Louisiana Oil Refining Corporation, 16 La.App. 294, 134 So. 343 (1931); Woodard v. Collins, La.App., 172 So. 207 (1937); and Blanchard v. Travelers Insurance Company, La.App., 121 So.2d 515 (1960).