### HARGIS v. McWILLIAMS CO., INC.

(August 13, 1928. Opinion and Decree.)
(September 4, 1928. Rehearing Refused.)
(October 3, 1928. Writ of Certiorari and Review denied by Supreme Court.)

Hopkins and Talbot, of New Orleans, attorneys for plaintiff, appellee.

Spearing and Mabry, of New Orleans, attorneys for defendant, appellant.

CLAIBORNE, J. This is a suit under the Employers' Liability Act.

The plaintiff, a citizen of Louisiana, alleged that on August 1, 1925, he was employed by the defendant, the McWilliams Co., a Louisiana corporation, to go to Long Beach in the State of Florida to work as engineer in a floating steam dredge operated and controlled by the defendant, through their superintendent, W. R. Pennington; that plaintiff at the time of his employment was living in the Parish of Terrebonne; that the defendant, through its president, R. H. Williams, Sr., agreed with said Pennington that its employees, especially plaintiff, would be covered by the Workmen's Compensation Insurance of this State; that on May 23, 1926, while plaintiff was engaged in the course of his employment in making repairs to the boiler on the dredge, plaintiff was struck in the left eye by a metal chip

which came off of the head of the hammer used by plaintiff in making his repairs; that the said object penetrated plaintiff's left eye ball and lodged therein, making it impossible for plaintiff to see out of said eye; that plaintiff had lost the sight of his right eye about eight years prior thereto and is now totally blind, and is permanently and totally disabled to do any work of a reasonable character; that plaintiff was receiving at the time of the injury $150 per month wages, and board and lodging estimated at $45 per month; that defendants furnished plaintiff hospital services estimated at $75, but have failed to pay for medical services employed by plaintiff; that plaintiff is entitled to compensation for 400 weeks at $20 per week and $175 for medical services, or $8175 with interest from May 23, 1926.

The defendant filed an exception of want of jurisdiction in State courts because the accident occurred in admiralty jurisdiction.

This objection is fully answered by the case of United Dredging Co. vs. Lindberg, (C. C. A. 1927), 18 Fed. (2d 453 (1927), and the exception was not pressed in this Court.

The next exception was "that the Louisiana Workmen's Compensation Law had no exterritorial effect."

In support of that exception the defendants quote the case of Nunemacher vs. Barnes, No. 162,180 of the Civil District Court, in which Judge Cage maintained the exception. They also quoted the cases of Perlis vs. Lederer, 189 App. Div. 425, 178 N. Y. S. 449; In re Gould, 215 Mass. 480, 102 N. E. 693; Union Bridge Co. vs. Industrial Commission, 287 Ill. 396, 122 N. E. 609; Johnson vs. Nelson, 128 Minn. 158, 150 N. W. 620; North Alaska vs. Pillsbury, 174 Cal. 1, 162 P. 93, L. R. A. 1917E, 642; Kruse vs. Pillsbury, 174 Cal. 222, 162 P. 891, L. R. A. 1917E, 645; Mer-

rill vs. Boston & Lowell R. R., 63 N. H. 259; 3 N. C. C. A. 639 (Mich.); Altman vs. N. D. Workmen's Compensation Bureau, 50 N. D. 215, 195 N. W. 287, 28 A. L. R. 1337; and Logan vs. Mo. Valley Bridge & Iron Co., 157 Ark. 528, 249 S. W. 21.

The principal argument in some of these cases, is that "there is no provision of the Act (compensation) which can be construed to authorize compensation for an injury occurring outside of the State." The answer to that is that there is no provision in the law restricting the liability to accidents within the State, nor any general law to that effect. It is true that Article 10 of our code provides that the effect of Acts passed in one country to have effect in another country is regulated by the laws of the country where such acts are to have effect.

But this Article does not pretend to affect the rights acquired by parties under a contract made in another country. If the Employers' Liability Act of Louisiana protects an employee against an injury suffered in another State, then this Article 10 has no application.

The object of the Compensation Act is to protect a contract made in Louisiana.

It is immaterial under the Act where the work has to be done; the law looks to the workman, not to the place where the work is done. The workman is not deprived of the protection of the law because the work is done outside of Louisiana.

The Act provides, Sec. 1 of Act 20 of 1914, "That this Act shall apply only to the following:

"1st. * * *

"2nd. Every person performing services arising out of and incidental to his employment in the course of his employer's trade, business or occupation, etc.

"Section 2: That if a workman employed as hereinabove set forth * * * receives personal injuries by accident arising out of and in the course of such employment his

employer shall pay compensation in the amounts, etc."

Nothing in this act restricts liability for work within the State. It suffices that the contract of employment be made in Louisiana to carry with it the liability of the employer fixed by that statute.

It matters not where the work is to be performed; the question is where was the contract made. If the law of the place where the contract was made fixes liability, the liability follows the employer wherever the work is done. Any other view would leave the workman without remedy or relief contrary to the object and spirit of the law and against the principle that the compensation law must be interpreted liberally, in a sense favorable to the workman.

The Employers' Liability Act of Louisiana forms part of every contract made in Louisiana for the employment of labor and carries with it the liability of the employer under said Act for every injury suffered by the employee in the course of his employment in executing the work within or without the State. Sec. 28, Ruling Case Law, 723 S. 19; Bradbury on Workmen's Compensation (3d Ed.) p. 92; Rounsaville vs. Central R. Co. (1915) 87 N. J. Law, 371, 94 A. 392; Pettiti vs. Pardy Const. Co. (1925) 103 Conn. 101, 130 A. 70; Zurich, etc., Ins. Co. vs. Industrial Commission (1927) 193 Wis. 32, 213 N. W. 630; Shurtliff vs. Oregon, etc., R. Co. (1925) 66 Utah, 161, 241 P. 1058; Krekelberg vs. M. A. Floyd Co. (1926) 166 Minn. 149, 207 N. W. 193; Leader, etc., Co. vs. Chapman (1926) 85 Ind. App. 296, 152 N. E. 872; Ind. Com. vs. Aetna Life Ins. Co. (1918) 64 Colo. 480, 174 P. 589; Anderson vs. Miller Scrap Iron Co. (1919) 169 Wis. 106, 170 N. W. 275, 171 N. W. 935; Donohue vs. Robertson Co. (1923) 205 App. Div. 176, 199 N. Y. S. 470; Anderson vs. Jarrett Chambers Co. (1924) 210 App. Div. 543, 206 N. Y. S. 458; McGuire vs. Phelan-Shirley Co. (1924) 111 Neb. 609, 197 N. W. 615; Smith vs. Van Noy Interstate Co., 150 Tenn. 25, 262 S. W. 1048, 35 A. L. R. 1409; 3 A. L. R. 1351; L. R. A. 1916A, 444; Bullowa vs. Gladding, 40 R. I. 147, 100 A. 249, L. R. A. 1917D, 841, 18 A. L. R. 292; Altman vs. N. D. Workmen's Compensation Bureau, 50 N. D. 215, 195 N. W. 287, 28 A. L. R. 1337; United Dredging Co. vs. Lindberg (C. C. A. 1927) 18 F. (2d) 453.

Such was the understanding of his liability by the defendant on page 19 of his testimony W. R. Pennington was asked:

"p. 15. Q. What was your connection with them (McWilliams Co., Inc.)?

"A. I was superintendent on this work they were doing in Florida.

"p. 19. When you made your arrangements with Mr. McWilliams to go to Florida as superintendent on this job did you discuss with him insurance for the men?

"A. We asked about compensation insurance. He said he carried that on all his work, visitors and all; he had a blanket policy to cover all his operations."

This testimony is confirmed by McWilliams himself on page 8. He was asked:

"Q. Did you tell him (Pennington) the men would be protected by insurance, leaving off the word compensation?

"A. I told him we carried insurance, which we did, everywhere.

"Q. You meant the men would be protected?

"A. I meant we would be protected.

Protected against what, if not liability?

The defendants produced a policy in their favor in the Fidelity Guaranty Company, of Baltimore, covering work to be done in the State of Florida with the admission that it covered the liability of defendant to its employees as therein set forth, on jobs in the States of Mississippi, Florida and Arkansas and that the premium on this policy was based upon only the payrolls covering the wages paid

by defendant to its employees on the jobs in those States, in which payrolls were included the wages of plaintiff.

The defendants admitted the contract of employment and that it was made at Houma in this State, and that the wages were $45 per week. They denied all the other allegations.

There was judgment for plaintiff at the rate of $20 per week for 400 weeks with interest and for $175 for medical services.

Defendant appealed.

The extent of the injury to plaintiff is fully proven.

The plaintiff testified that at the time of the injury he was repairing a boiler on a steam dredge, using a hammer. Something flew off from the head of the hammer and hit him in the left eye; he had to quit work right away; the next morning he went to see Doctor Byrd; he could hardly see at all; the doctor treated him during four or five months; during that time he could not do much; he had lost the sight of his right eye several years before, it was taken out, and he has no right eye now except a glass eye; at the time of his injury he was drawing as wages $150 a month, and board and lodging worth $1.50 a day; he returned to New Orleans in October where he was treated by Dr. Whitmire; he has not been doing any work since he returned to New Orleans, because he could not see to do any work; he cannot go along the streets well; he could not read the gauge on an engine, the object which went into his eye was never removed; his wife supports him since he got hurt; he did not think he could see enough to do anything; after his injury he worked on half pay, but not the same work, until July, when he was discharged for lack of work; he returned to New Orleans but did not try to get any work, because he could not see enough to work.

W. R. Pennington testified that he employed the plaintiff; the plaintiff was hurt while making the repairs; the next morning his eye was much swollen, he took him out in an automobile to see Dr. Byrd; the doctor kept him in the hospital two or three weeks; later he returned when the doctor instructed them to put him on light work; they put him on as an oiler, that was all he could do, and that not well.

Dr. Whitmire testified that plaintiff was sent to him by Dr. Byrd in October, 1926; there was a scar on his eye where the foreign body had entered; he judged it would have been a very large piece of iron; he could not see it; for a while after he saw him his eye was as soft as a powder puff, which is a pretty dangerous sign, the vitreous fluid in the eye was filled with opacity like the dregs in an old bottle of medicine when it decomposes; the foreign body which passed into the eye-ball no doubt produced an infection of the vitreous which is liable to result in blindness; he could not resume his occupation of fireman, it would be unsafe for him to go where automobiles run; when one eye is lost it makes it hazardous for any kind of work; he could not make entries in books; he could handle boxes fairly well; his vision is 20/100; he has lost 40 per cent of that eye and his vision is about 60 per cent of that eye but he has no eye on the other side.

We are of the opinion with the trial Judge that plaintiff's case comes under the following clause of Act 216 of 1924, p. 399:

"Section 8: That for an injury producing disability compensation shall be paid under this act to an injured employee in accordance with the following schedule of payments: (a) * * * (b) For an injury producing permanent total disability to do work of any reasonable character sixty-five per centum of . wages during the

period of disability, not however beyond four hundred weeks."

But S. 3, p. 402, of the same section provides that "the maximum compensation to be paid under this act shall be twenty dollars per week." Rutter vs. N. O. Public Belt, No. 10,960 Orl. App., May 7, 1928.

In Bailey vs. Gifford, etc. Co., 7 La. App. 513, the Court said:

"Where the evidence of physicians in a suit for compensation under the Employers' Liability Act No. 20 of 1914, section 8, subsection 1 (b), as amended by Act No. 216 of 1924, is such that whether the disability is temporary or permanent cannot be definitely determined at the time of the trial, judgment should be given for sixty-five per cent of the wages during disability not beyond 400 weeks."

But the defendants argue that the amount of the judgment should not exceed 65 per cent of wages during 100 weeks, for the reason that plaintiff suffered the loss of only one eye, and under section 8, 1 (A.) p. 399 he was entitled only "for the loss of an eye sixty-five per centum of wages during one hundred weeks," and that for a permanent partial loss of the use of the member compensation could not be granted for a greater period than that provided for the loss of the member.

James vs. Spence & Goldstein, 161 La. 1108, 109 So. 917.

It is evident that the plaintiff's claim is not based upon section 8, 1 (d) "for the loss of an eye," for that would produce only a partial disability in case the plaintiff had both eyes, and that is the partial disability that that section has in contemplation.

But the plaintiff claims under Section 8, 1 (b), quoted above, for an injury producing permanent total disability to do work of any reasonable character.

Such was the interpretation of the Court in Brooks vs. Peerless Oil Co., 146 La. 383, 83 So. 663, and Guderain vs. Sterling Sugar Co., 151 La. 59, 91 So. 546.