### ABOOD v. LOUISIANA OIL REFINING CORPORATION et al.*
### No. 4794.

Court of Appeal of Louisiana. Second Circuit.
June 29, 1934.

*Rehearing denied July 16, 1934.

Hunter & Hunter, of Shreveport, for appellant.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellees.

MILLS, Judge.

Plaintiff was, on August 15, 1930, in the employ of the Louisiana Oil Refining Corporation, at a salary of $100 per month, as shipping clerk in its warehouse in Bossier City, La. He was on that date laid off until September 15, under an arrangement to alternate with another employee. On returning to the warehouse at the end of the period he was called to the office and there told by F. T. Reed, service manager, that a full-time regular job was open at Jackson, Miss., in the warehouse of the Louisiana Oil Corporation, a separately incorporated concern doing business exclusively in that state. His recital of what took place is as follows:

"I went to the office and Mr. Reed told me he had a job in Jackson for me and wanted me to take a job over there, being regular job. As it was I only worked 30 days here in Shreveport, laid off 30 days, in other words, alternate my job with another man to keep from laying off either one permanently. So he told me it would be a regular job, so I asked him for a day to think it over and I accepted the next day, the 16th of September, and the morning of the 17th I went to Jackson, Mississippi."

He states further that it was agreed between him and Reed that he was to receive the same salary and would in addition be furnished sleeping quarters in the warehouse, in return for which he was to do night watching. When he accepted employment at Jackson he was aware that the title of the concern in Mississippi was the Louisiana Oil Corporation, and was paid by checks so signed, drawn on a Jackson bank.

In contradiction of his claim that it was agreed between him and Reed that he was to be furnished quarters in the warehouse as a part of his compensation, he admits that upon his arrival in Jackson he and Mr. Campbell went around trying to find a suitable room in the town, and that it was only after failing in this that Campbell's invitation to occupy a vacant room in the warehouse was accepted.

On December 14, 1931, he was carried on the rolls as a truck driver, though he worked around the warehouse when there. On that day, upon his return at 6:30 p. m. from a trucking trip, after washing up at the room in the warehouse preparatory to going out to dinner, he leaned over to cut off the gas stove. As he did so, a pistol which he was carrying in a shoulder scabbard fell out and discharged as it struck the floor, the bullet entering his knee and causing the injuries and disability for which he claims compensation. He admits that the pistol was his personal property; that he had never been instructed or authorized by his employer to carry it; that he carried it on his trucking trips and for his personal protection when he went out at night into the town.

The deposition of F. T. Reed, taken upon application of, but not offered by, the plaintiff, was filed in evidence by the defendant. His testimony, in substance, is that the office of the Louisiana Oil Refining Corporation was informed by the Louisiana Oil Corporation that there was a vacancy in the Jackson, Miss., warehouse; that he advised Abood of this fact and that Abood, in order to get a full-time job, decided to go to Jackson and see if he could make satisfactory arrangements to work there. He advised Abood that, though no salary had been named, it would probably be less than he was receiving, but that he would probably be allowed to live in the warehouse. He states positively that Abood was not transferred, but was only recommended by the refining corporation officials. He admits that these recommendations were generally followed, but claims that he did not hire or fire the oil corporation's employees. He says that Abood was told the definite arrangements as to his duties, privileges, salary, etc., would have to be made with the officials at Jackson, and that he does not know what arrangements were finally entered into.

W. A. Campbell, who is in charge of the Jackson warehouse of Louisiana Oil Corporation, testifies that when Abood reported he tried to hire him for $80 per month, but finally agreed to pay $100; that the occupancy of a room in the warehouse was no part of the agreement of employment, but was merely a privilege which was gratuitously allowed after the failure of Abood to find satisfactory quarters elsewhere; that he was given no additional duties or work to perform because of

the occupancy of the room; that after closing time at 5 p. m., Abood was free to come and go as he pleased. He says that Abood not only had no duties requiring the carrying of a weapon, but that when he saw him with the pistol he advised him to get rid of it.

There is much testimony in the record and argument in the briefs as to the relationship of the two corporations. It is shown that they were organized at different times and under the laws of different states. The refining corporation does business in Louisiana, Arkansas, and Oklahoma; the oil corporation exclusively in Mississippi. All the stock of the latter is owned by the former; the latter being a subsidiary organized to handle the products of the refining corporation in the state of Mississippi. The employees of each were independently engaged, carried on different pay rolls, and paid out of different funds. It is the contention of plaintiff that they are in legal effect one and the same, and that when plaintiff was injured in Mississippi while working for the oil corporation he was in effect an employee of the refining corporation.

■ We agree with the opinion of the lower court, adverse to plaintiff, on this point, but do not find it necessary in disposing of this case to review it at length. We are satisfied, as was the district judge, that the contract of employment was entered into at Jackson, Miss., and involved service to be rendered wholly in that state, in which event our Workmen's Compensation Act, No. 20 of 1914, as amended, does not apply.

But if we should be wrong as to this, plaintiff still, under our jurisprudence, cannot recover. This is not a case of a resident of Louisiana contracting in Louisiana to go into another state to do work of a transient nature. On the contrary, Abood severed his connection with the Louisiana Oil Refining Corporation, changed his residence to the state of Mississippi, and took up permanent employment there.

In Hargis v. McWilliams Co., Inc., 9 La. App. 108, 119 So. 88, 89, it is held that where a citizen of Louisiana, employed in Louisiana by a Louisiana corporation to go to another state and work, and is there injured, the Louisiana Workmen's Compensation Law controls. In that case the court said:

"It is immaterial under the act where the work has to be done; the law looks to the workman, not to the place where the work is done. The workman is not deprived of the protection of the law because the work is done outside of Louisiana."

To the contrary, in the case of Durrett v. Eicher-Woodland Lbr. Co., 19 La. App. 494, 136 So. 112, 140 So. 867, on rehearing, it is held that the location of the industry where the services are to be performed has more to do with the right to recover than the place of contract. The opinion in this case decidedly narrows and restricts the ruling in the Hargis Case. In the Durrett Case a citizen of Louisiana contracted in Louisiana with a firm located and doing business in the state of Mississippi to do work solely in Mississippi, unconnected with any work being carried on in Louisiana, and received injuries while working there. Based upon this finding of fact, the court held that the right to recover for injuries so received is governed by the law of Mississippi; that though liberally construed, the Compensation Law of Louisiana cannot be extended to such a case, which is distinguished from that of Hargis v. McWilliams Co., supra, in that in the latter case the employer was a Louisiana concern which employed Hargis to go out of that state to do temporary or transient work, with the intention of returning to Louisiana.

As we understand the decision in the Durrett Case, its finding is that where work is wholly to be performed in another state, not incidental to the business of the employer located in the state where the contract is entered into, the contract is governed by the Compensation Law of the state where the work is to be performed, and not of the state where the contract was entered into.

In the case of Selser v. Bragmans Bluff Lumber Co. (La. App.) 146 So. 690, 695, in distinguishing the Durrett Case, the court, we think, is mistaken when it says: "In the Durrett Case the court finally concluded that the contract was entered into in Mississippi, after defendants had permanently left the state of Louisiana and located in Mississippi." We understand the court to say in the Durrett Case that the employer's letter mailed from Mississippi to the employee at his Louisiana residence and there accepted by him constituted a Louisiana contract. Unless this is so, the opinion is without significance, and the expression of the court, that it makes no difference, under the circumstances, where, when, or how the contract was entered into, without meaning. The facts in the Selser Case clearly distinguish it from the Durrett Case and that before us for decision, because in the Selser Case deceased was employed in

Louisiana by a Louisiana corporation to do work in Nicaragua of a transient and temporary character in connection with and incidental to its Louisiana industry; the Nicaragua branch being entirely controlled and managed from the main office in New Orleans.

■ Upon the trial of the case, J. G. Hewitt, a resident of Mansfield, who had promised plaintiff's counsel to be present and testify, failed to appear. Plaintiff did not move for a continuation, but asked that the case be left open for the subsequent taking of the testimony of Hewitt. This request the court, in its discretion, refused. After the testimony had been concluded and the case closed, but before argument, counsel for plaintiff moved to reopen, and attached to the motion the affidavit of Hewitt. This motion was also overruled. Plaintiff's objection to the ruling presents a matter peculiarly within the discretion of the trial judge. Though the testimony of Hewitt, if in accord with the affidavit, is important and material, we do not feel justified in reversing the trial judge and remanding the case, particularly as the action of counsel in relying upon the presence of an important witness to attend is not the exercise of due diligence.

Plaintiff also complains of the form of defendant's answer which, though articulated, is practically a general denial and does not state the contention of the defendant with reference to the matter in dispute. The contention as to the law governing the case is, however, specifically set out in an amended answer and is properly before us for decision.

Complaint is also made that, though timely requested to file a written opinion, the trial judge did not do so until after the perfection of plaintiff's appeal. Section 43 of article 7 of the Constitution of 1921 provides that:

"All district judges, in contested civil, other than jury cases, wherein there is a right of appeal, when requested by either party, shall give in writing a finding of facts and reasons for judgment."

■ While we believe that this requirement intended that the written opinion should be filed at the time of the rendition of judgment, no time is fixed in the section. As the opinion is in the record for review on appeal, we do not find that the delay has caused injury so material as to call for relief.

For the reasons above assigned, the judgment appealed from, rejecting plaintiff's demand, is affirmed.