ORLEANS DREDGING CO. *v.* FRAZIE.

(Division B.   May 20, 1935.   Suggestion of Error Overruled Sept. 16, 1935.)

[161 So. 699.   No. 31709.]

Brandon & Brandon, of Natchez, for appellant.

884

Engle & Laub and Whittington & Brown, all of Natchez, for appellee.

Argued orally by **Gerard Brandon**, for appellant, and by **S. B. Laub**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

Cowpen Point, at Gile's Bend, above Natchez, in Adams county, Mississippi, is a narrow point of land projecting westwardly for a distance of six or eight miles

and is thus formed by an extreme bend in the Mississippi river. As a part of its flood control program, the federal government in the spring of 1933 entered upon the work of cutting the two miles across this point near the base of the bluffs, so as to shorten the river by about twelve miles. The first part of this work was done by drag lines which was then followed by dredges. On August 2, 1934, the dredge boat Cartagena, owned and operated by appellant, a Louisiana corporation, was engaged in finishing this work of cutting the channel across the point, and had progressed some two thousand feet or more from the southern point of entrance. The Cartagena was not self-propelled, it carried no commerce, its sole business was dredging.

Appellee, a citizen of Louisiana, had been employed by appellant in Louisiana some months before to work for appellant on its said dredge boat Cartagena; the operations being at that time actually in Louisiana. On June 19, 1934, the Cartagena was moved to this work at Cowpen Point, and, under the same employment, appellee remained as one of the employees thereon. On the date mentioned, August 2, 1934, appellee was severely injured in the course of his employment on said dredge boat, and subsequently brought suit in the circuit court of Adams county, under the United States Seamen's Act, sections 688, 713, Title 46, U. S. C. A. The trial court held the Federal Seamen's Act applicable, the case was tried under that law, and appellee recovered a judgment.

Many efforts have been made to define in a few words the field and scope of the jurisdiction in admiralty within which Congress may legislate under the grant to it of authority by section 2, article 3, Constitution U. S. Such efforts have not been entirely successful, and we shall not venture therein further than to say that there is no difficulty in a case where the vessel is actually navigating in navigable waters carrying commerce, or where it is proceeding to a point of loading, or where

it is being loaded or unloaded, or is being repaired; and this much is said as charterizing most of the authorities cited by appellee, as, for instance, where a steamship is being repaired and is tied up for that purpose, John Baizley Iron Works v. Span, 281 U. S. 222, 50 Sup. Ct. 306, 74 L. Ed. 819; where a seagoing vessel is being loaded with ice, Jones v. Crescent, etc., Co., 162 La. 151, 110 So. 182; or where one is employed to operate a pump to keep water out of the bottom of a ferryboat, Meyers v. Hankins Bros., 5 La. App. 190; or a stevedore is unloading a seagoing vessel, Uravic v. F. Jarka Co., 282 U. S. 234, 51 Sup. Ct. 111, 75 L. Ed. 312. We proceed, therefore, at once to examine cases in precise point, that is to say, cases concerning a dredge boat, without motive power of its own, which carries no commerce, and in which its sole relation to the maritime field is that it floats on navigable waters, and is engaged in preparing a channel upon which maritime commerce is to be carried. And we concern ourselves chiefly with the holdings of the federal courts on the subject; the inquiry being upon the scope and meaning of a federal statute, in regard to which the decisions of the federal courts are binding upon state courts, as are the decisions of state courts with respect to the meaning of state statutes controlling upon federal courts.

Precisely in point is United Dredging Co. v. Lindberg (C. C. A.), 18 Fed. (2d) 453, 454. In that case the dredge boat was cutting a navigable canal across land from the Sabine river to Lake Charles, in Louisiana. The dredge was kept afloat by water which followed the dredge boat and filled up the canal as it was cut. The court tersely said of the character of the work, "While there was deep water around the dredge, and the channel she was digging was intended to be navigated when finished, she was in fact merely eating her way over land . . . to create a navigable channel;" and the court held for a death occurring in the course of that em-

ployment the state compensation law and not the admiralty law applied. This case was reaffirmed in Fuentes v. Gulf Coast Dredging Co. (C. C. A.), 54 Fed. (2d) 69, and was accepted as controlling authority in Hargis v. McWilliams Co., 9 La. App. 108, 119 So. 88, 89. To the same effect is Southern Surety Co. v. Crawford (Tex. Civ. App.), 274 S. W. 280, wherein the court said: ''Here . . . the dredge was not a seagoing vessel, nor even self-propelled, but had to be towed everywhere; nor was it at the time of this casualty mediately or immediately engaged in navigation or commerce as such of any nature, being then located up in the Texas City channel in Galveston Bay . . . and actively at work dredging the channel at that local point.''

In Saylor v. Taylor (C. C. A.), 77 Fed. 476. and in The Hurricane (D. C.), 2 Fed. (2d) 70, affirmed (C. C. A.), 9 Fed. (2d) 396, a contrary conclusion was reached, dealing with the subject of maritime liens. Appellee also relies on Gray v. New Orleans, etc., Co., 146 La. 826, 84 So. 109, 112, wherein it was held that a dredge boat being repaired in a dry dock is within the admiralty jurisdiction. In the opinion in that case it is stated that: ''It is not contended . . . that the dredge boat Dixie was not a ship or vessel within the meaning of the admiralty law.'' That case was ruled upon some time before the decision of the federal court of appeals of this circuit in the Lindberg case, supra; and since the Louisiana courts have lately recognized and followed the Lindberg case, as has been above mentioned, and since the parties to the cause now before us are Louisiana parties, in regard to whose respective rights and liabilities we should be, and are, content to accept the latest Louisiana decisions, we must hold that the state law and not the Federal Seamen's Act applies, so far as concerns the case now under consideration.

In the Louisiana case, Hargis v. McWilliams Co., 9 La. App. 108, 119 So. 88, above referred to, the injury

occurred while working on a floating steam dredge then in waters within the territorial boundaries of the state of Florida. The employee injured was a citizen of Louisiana, and the dredge boat owner was a Louisiana corporation. The contract of employment was made in Louisiana. The court held not only that the Federal Seamen's Law did not apply, citing the Lindberg case, but that the Louisiana Workmen's Compensation Law did apply. The court held that when a contract of employment is made in Louisiana, and particularly when made by and between Louisiana parties, the state compensation law follows and protects the workman not only in Louisiana, but wherever he might go in the employment and wherever the injury might occur, so long as in the course of the employment. This seems to be the settled rule under Louisiana jurisprudence as may be seen from the review of their decisions in Selser v. Bragmans, etc., Co. (La. App.), 146 So. 690, and we, therefore, act upon it in this case. See Alaska Packers Ass'n v. Industrial Acc. Comm., 55 Sup. Ct. 518, 79 L. Ed. 1044.

But appellee argues that although he is a citizen of Louisiana and the appellant is a Louisiana corporation and the contract of employment was made in Louisiana, there was no agreement or understanding at the time of the employment that the work would be done in part in another state; and appellee asserts that all the Louisiana cases which hold that its compensation laws operate extraterritorially have been where the contract was expressly made for work beyond the state. Since the Louisiana compensation law, in respect to a contract made in Louisiana between Louisiana citizens, follows the employee everywhere he may go in the execution of the employment, we are unable to see the materiality of the inquiry whether the contract, when made, contemplated its execution within or without the state, or partly within and partly without.

Appellee suggests that there is no proof that appellant employer has complied with the requirements of the

Louisiana compensation law. That question seems to have been raised here for the first time. There is a presumption in the absence of anything to the contrary that a party has obeyed the law. If upon the new trial it is shown that the appellant has not qualified under the Louisiana compensation law in such manner as to be entitled to avail of it as the law applicable to this case, and as to which matter we have made no investigation, then the court will apply the law of Mississippi, the state within whose boundaries the injury occurred. But appellee was severely injured. Under the Louisiana law his compensation for the injury is certain. Under the law of this state, and for two reasons not necessary now to be discussed, his right of recovery is uncertain. He is a citizen of Louisiana. Therefore, any doubts as to the applicable law should be solved in favor of the Louisiana law.

It remains only to be added that the court will not dismiss appellee and require him to go to Louisiana to propound his claim. In Floyd v. Vicksburg Cooperage Co., 156 Miss. 576, 126 So. 395, it was settled that the courts of this state will recognize and enforce the Louisiana Workmen's Compensation Law (see, also, Travelers' Ins. Co. v. Inman, 157 Miss. 810, 819, 820, 126 So. 399, 128 So. 877); and this is now the general rule everywhere as to the enforcement of compensation laws. See authorities cited in the Lindberg case, supra. Appellee concedes this as to injuries occurring in Louisiana, but says that since the injury occurred in this state, we are not bound to apply the Louisiana law. That we must do so, under the facts of this case, we regard as settled in Bradford, etc., Co. v. Clapper, 286 U. S. 145, 52 Sup. Ct. 571, 76 L. Ed. 1026, 82 A. L. R. 696.

Reversed and remanded.