**SCHNEIDER v. TRAVELERS INS. CO.
et al.**

**No. 5408.**

Court of Appeal of Louisiana.   Second
Circuit.

March 1, 1937.

E. W. & P. N. Browne, of Shreveport,
for appellants.

Harry V. Booth, of Shreveport, for appellee.

HAMITER, Judge.

A dislocation of plaintiff's left knee resulted when he attempted to lower himself from one scaffold to another while performing the duties of a carpenter in the construction of a building.   At the time of the injury, he was in the employ of J. C. Moore, a contractor.

Permanent total disability is claimed by plaintiff in this compensation suit which he instituted against his employer and the latter's insurer, the Travelers Insurance Com-

pany. He specifically and definitely invokes the provisions of subsection 1 (b) of section 8 of Act No. 20 of 1914, as amended.

Besides employing allegations that are usual in suits of this nature, plaintiff alleges that as a result of the accident and injury he has developed adhesions in his left knee, following the removal of the internal semilunar cartilage, and there has also developed therein a traumatic arthritic condition; and that said knee lacks flexion, is stiff and sore, and presents a permanent hazard and handicap to the following of his trade, which is that of a carpenter. He further alleges a previous accident and injury to his right knee, and that such knee is still sore, thus adding to the degree of his disability.

Defendants, in their joint answer, admit the injury to plaintiff's left knee; deny that he is entitled to any compensation by reason of an injury to the right knee, if any was suffered; deny that he was totally and permanently injured as alleged; and aver that he was only temporarily totally disabled for a period of 24 weeks, and in no event is he entitled to compensation in excess of 20 additional weeks as for 25 per cent. disability and loss of earning capacity during such period. In effect, the answer is a general denial of plaintiff's allegations.

The case was tried on the issues thus created. There was judgment in the district court awarding plaintiff compensation, as for total and permanent disability, at the rate of $17.58 per week for a period not to exceed 400 weeks, less the amount of compensation already paid to him, and for all costs.

Defendants then filed a motion for a new trial which was overruled. This appeal resulted.

An admission is found in the record that the defendant insurance company was the compensation insurer of its codefendant, J. C. Moore, and that the policy was in full force and effect at the time of the accident. Furthermore, it is conceded that plaintiff was injured while working in the scope and course of his employment with the named contractor.

In this court, defendant insurance company has filed a motion to remand. It avers therein that plaintiff is suffering from a low grade of arthritis in his left knee due to a focal infection from bad tonsils, teeth, and gums, and that if he submits to a tonsil operation, the extraction of several teeth, and treatment of his gums, the focal infection and arthritic condition will clear up and that from 3 to 6 months thereafter plaintiff will be able to do normal work. These averments are founded on certain expert testimony in the record. It is further alleged that an operation for the teeth and tonsils was tendered to plaintiff, in connection with the above-mentioned motion for a new trial filed in the district court, but that the court refused to consider such tender. A renewal of the tender is then averred, and it prays that the motion to remand be granted and that the case be returned to the trial court for the taking of testimony and a hearing on the question of the legality and appropriateness of the tender.

The case presents three matters for determination: (1) The extent of plaintiff's disability; (2) the particular provision of the Employers' Liability Act under which the disability is to be compensated; (3) the effect of the motion to remand.

Proceeding to a discussion of these items in the order named, we find from the record that the injury to plaintiff's left knee occurred on September 23, 1935, while he was stepping from one scaffold to another. He was 53 years of age at the time. A twist of his leg caused the dislocation or locking of the knee, and for a period of almost 6 weeks he was treated by a general medical practitioner. Upon failure of the limb to respond properly to these treatments, he was sent to an orthopedic surgeon by defendant insurance company. An operation was performed on October 31, 1935, and about three-quarters of the semilunar cartilage and a portion of the attachments were then removed from the knee. Plaintiff remained in the hospital for approximately 8 days. During that time the leg was in a cast. Thereafter, he made periodical visits to the office of the surgeon for examination and treatment. On one of these visits, and before the injury had healed, he stumbled and reinjured the knee.

During or about the year 1924, plaintiff sustained a similar injury to his right knee. An operation was necessary and was then performed.

Expert testimony was furnished in plaintiff's behalf by six physicians. None of these specialized in orthopedic surgery or had performed many knee operations. Almost all, however, had either assisted in or

observed operations of that nature. Defendants offered the testimony of Dr. H. A. Durham, a recognized orthopedic surgeon, who operated on plaintiff's left knee; and also that of Dr. B. C. Garrett, a general practitioner, but one who has performed numerous knee operations, including that on plaintiff's right knee, and who was appointed by the district court as an expert to make a physical examination of and report on plaintiff's injury and disability.

All of the above-mentioned experts examined plaintiff either immediately preceding or during the trial of the case, and, although they differed with one another in several particulars, they were in full accord that at the time of their examinations, which took place approximately 9 months after the injury, he was suffering some disability. Various estimates as to the extent of the disability in his left knee were given by them, ranging from 20 per cent. to 35 per cent. It was their unanimous opinion, also, that plaintiff had bad teeth, tonsils, and gums, which produced a focal infection, and that the source of that infection should be removed. They further agreed that when the trial was had the left knee possessed a tenderness and a limitation on its flexion, and that pain was experienced by plaintiff when the knee was flexed beyond 70 or 75 per cent. of full flexion.

Most of plaintiff's experts were of the opinion that the accident combined with the focal infection to cause an arthritic condition in the left knee. Some thought that adhesions had surrounded the joint, thus occasioning a limitation of its motion; and that the right knee was still tender and impaired, and that this aggravated the disability existing in the other knee.

The testimony of Dr. Garrett, together with the report filed by him as an expert appointed by the court, discloses that the right leg is normal, and that plaintiff can bend the knee of that leg as well as ever; that it has good flexion and extension and no disability, although its possessor complains of tenderness there; that the disability in his left knee should improve from "time to time"; that adhesions are there present, but that these should break up and permit normal work in about 3 months; and that at the time of the trial there was flexion in the left knee without pain to the extent of about 70 per cent.

Dr. Durham examined the injured man while the case was being tried. According to his finding at that time, there was a three-quarter atrophy of the left thigh caused by disuse. A tenderness existed in the left knee, and plaintiff walked with a limp and probably suffered pain. No improvement in that knee was noticed since his last examination made during the preceding month.

■■■ A careful consideration of the testimony of all of the experts leads to the inescapable conclusion that a disability of at least 25 per cent. existed in plaintiff's left knee. No doubt his continuing disability was aided and aggravated by the focal infection produced by the tonsils, teeth, and gums, but it cannot successfully be disputed that plaintiff's condition was superinduced by and had a causal connection with the injury experienced in the accident which necessitated the operation on his left knee. Where the traumatic injury is a contributing cause of the disability, recovery under the Employers' Liability Act is authorized. Anderson v. Louisiana Oil Refining Corporation, 16 La. App. 294, 134 So. 343; Woodard v. T. E. Collins et al., 172 So. 207, decided by this court but not yet reported [in State Report].

It is plaintiff's contention, as hereinabove stated, that he is entitled to the compensation provided for under subsection 1 (b) of section 8 of Act No. 20 of 1914, as amended by Act No. 242 of 1928 (page 357), which reads:

"For injury producing permanent total disability to do work of any reasonable character, sixty-five per centum of wages during the period of disability, not, however, beyond four hundred weeks."

The theory of the defense is that plaintiff should be restricted to recovery as for 25 per cent. loss of earning capacity under subsection 1 (c) of section 8 of said act, as amended, as for partial disability to do work of any reasonable character, in the event it be determined that the disability is permanent. The referred-to subsection states:

"For injury producing partial disability to do work of any reasonable character, sixty-five per centum of the difference between wages at the time of injury and wages which the injured employee is able to earn thereafter during the period of disability, not, however, beyond three hundred weeks."

The vocation of plaintiff is and has been for 35 years that of a journeyman carpenter. In pursuing his trade, he is required to climb ladders, work on scaffolds and on roofs, and in many instances labor while in various bending positions. While performing a roofing job, he is called upon to lift materials to the place of operations and to work while on his bended knees. He must kneel at certain times during the process of hanging a door. The laying of flooring requires him to be constantly on his knees. In doing this, he must often rest on a 4-inch plate or on a joist.

Mr. Homer Hodges, a contractor, and Mr. John Howat, business manager of the Shreveport Carpenters' Union, both of whom were witnesses for plaintiff, testified that a man possessing a 25 per cent. disability in one knee cannot do the work of a journeyman carpenter under present conditions. Mr. Strube McConnell, a contractor and defense witness, stated that he had at different times worked a man who had a crippled knee, but that he employed carpenters on the basis of their being able to "deliver the goods." A man who has physical pain and suffering, and consequently is irritable, is not wanted by him.

When questioned regarding plaintiff's disability, Dr. Durham, a defense witness, testified:

"Q. I do not know whether you can answer this question or not. I will ask you what per cent of disability is there in the use of the left knee at this time, Doctor? A. I figure twenty five per cent.

"Q. What disability to do normal work, or say what is his per cent of doing average carpenter work, or what work do you consider one has to do to do carpenter work? A. I think one has the ability to do carpenter work, that is general carpenter work, he has of necessity to be able to climb up on ladders and scaffolds. I think that his disability to do that class of work would be greater.

"Q. Would be greater? A. Yes, sir.

"Q. He could do ground work? A. Yes, probably twenty five per cent on ground work, that did not require him to climb ladders or carry heavy loads."

The evidence discloses that plaintiff, with his disability, can do ground or bench work and is able to act as foreman or superintendent, as he has occasionally done in the past. This fact is particularly called to our attention by defense counsel as being in support of their contention that plaintiff's loss in earning capacity is only 25 per cent. Conceding plaintiff's ability in that respect, it is well recognized that modern methods of house construction demand a negligible amount of ground or bench work, and provide slight need for a man whose labors are restricted to that character of work. Many requisite parts of the building, which were formerly prepared and constructed on the premises, are now machined and assembled at the mill and delivered to the structure for immediate insertion therein. Furthermore, it is a matter of common knowledge that opportunities for obtaining a position as foreman or superintendent are few in comparison to those relating to the procurement of a carpenter's job. As a general rule, only one superintendent or foreman is assigned to a construction project, while numerous journeyman carpenters are employed thereon.

The clause, "work of any reasonable character," as used in the Employers' Liability Act, contemplates work of the kind for which the injured party is fitted by status, training, and education. Custer v. New Orleans Paper Box Factory (La.App.) 170 So. 388; McQueen v. Union Indemnity Co., 18 La.App. 612, 136 So. 761; Franklin v. Roger Co., 2 La.App. 764. When consideration is given to that interpretation, to the recognized liberal construction rule regarding the applicable statute, and to the established fact that plaintiff's disability prevents a performance of the regular and usual duties of the trade which he pursues and for which he has been trained and equipped, the conclusion is inevitable that the compensation claimant herein is totally disabled within the meaning and intendment of the Employers' Liability Act.

The Supreme Court, in Barr v. Davis Bros. Lumber Co., 183 La. 1013, 165 So. 185, had for consideration a compensation suit involving an injury to the left leg of an employee who was a manual laborer, and whose work at the time of injury was that of log cutting. As the injury prevented his doing manual labor of any reasonable nature, the court authorized recovery for total and permanent disability under subsection 1 (b) of section 8 of the Employers' Liability Act, rather than under the specific injury section of the act. It

was the opinion of our highest court that the statute in question was enacted for the purpose of providing an employee, whose wages were discontinued as the result of an injury while serving his master, with funds to subsist on until he could return to work.

The testimony of the experts does not definitely establish the period of duration of plaintiff's disability. Some of the witnesses offered in his behalf say that it is permanent. Dr. Garrett thought that with proper care, the leg would again become normal, and that "it might take three months more now." It was the opinion of Dr. Durham that the knee condition would clear up if the tonsils and teeth were removed. When asked what period of time that would require, he replied, "It is impossible to give a correct estimate, but I would say in three to six months, under favorable conditions and cooperation of the patient." The correct principle of law affecting the question of duration appears to be that where the disability is total, but the evidence does not disclose definitely whether it is permanent or temporary, the appropriate compensation should be allowed during the disability, but not beyond 400 weeks. Duke v. Dengail Oil & Gas Co. et al. (La.App.) 152 So. 791; Hargis v. McWilliams Co., Inc., 9 La.App. 108, 119 So. 88; Bailey v. Gifford Sand & Gravel Co., 7 La.App. 513.

In view of the fact that plaintiff has agreed to submit to the removal of his tonsils and the infected teeth, and to the treatment of his gums, all at the cost of defendant insurance company, we find it unnecessary to discuss the motion to remand and, accordingly, it is overruled. This referred to agreement was entered into by counsel for the parties during their oral arguments of the case before this court.

The compensation payments provided for in the judgment of the trial court are fixed on the basis of a weekly wage of $27.50. The parties do not contend that they were incorrectly or improperly computed. Anyway, we find them to be correctly determined and supported by the evidence and by the applicable statutory provision. However, the judgment, which provides for the compensation to be paid for a period not to exceed 400 weeks, does not limit such compensation "during the period of disability" as stipulated in the statute. To this extent, it should be amended.

The judgment of the trial court is therefore amended to the extent mentioned in the preceding paragraph, and, as amended, it is affirmed with costs.