The facts in this case are substantially as follows:
The plaintiff, Sullivan H. Hunt, a married man, residing with his wife at Westlake, Louisiana, was first employed by the defendant, Magnolia Petroleum Co., on August 2, 1937, and worked as an oil-field rough-neck in what is referred to as the *Page 110 
Cameron Meadows District in Louisiana. At the time of this first employment he was examined by Dr. R.G. Holcomb, the defendant company's examining physician at Lake Charles, Louisiana. He worked intermittently in Louisiana, but on one occasion was sent for a brief period to the Amelia oil-field in Texas, after which he again worked for the defendant in Louisiana.
On February 16, 1939, as had been the case before when work was slack, he was laid off; but on that occasion, he withdrew from a voluntary annuity and insurance plan carried by the Magnolia Petroleum Co. for its employees, and cashed the benefits he was entitled to receive thereunder.
Within a month from that date he was again contacted by an employee or representative of the defendant company out of its Lake Charles office and was advised that there was some work for him at Kermit, Texas. He reported at once to the Lake Charles office and was sent, or went himself, to the Iowa field office, at Iowa, Louisiana, where records of physical examinations in the Louisiana district were kept, but was unable to secure his record just then. He was instructed however to report to the "tool-pusher" at Kermit, Texas, which he did, but before being put to work, had to submit to another physical examination which he passed. His wife went with him to Kermit, Texas, but they did not move their furniture there. He started to work on March 14, 1939, and worked continuously until May 25, 1939, on which day he sustained a severe accidental injury to his right leg.
On the same day that plaintiff was injured his employer forwarded a report to the Industrial Accident Board of Texas on a standard form supplied by that Board. This form is styled "Employer's First Report on Injury". On June 9, 1939, the Safety Casualty Company, the employer's compensation insurance carrier for the State of Texas, reported their payment of compensation at the rate of $20 weekly.
On June 8, 1939, plaintiff also submitted two forms to the Industrial Accident Board, both of which had been supplied by the Board one being styled "Claim for Compensation" and the other "Notice of Injury". These forms were filled out by plaintiff's wife but were signed by him. All matters relating to the filing of these forms by both the employer and employee appear to have been in conformity with the usual procedure under the Workmen's Compensation Law of Texas.
In the meantime, the Safety Casualty Company continued to pay plaintiff compensation at the rate of $20 per week and also furnished him medical services until October 23, 1940, when his compensation payments were reduced to $10 per week. On October 26, 1940, plaintiff consulted the present attorneys who are prosecuting this suit and they wrote the Safety Casualty Company demanding compensation for plaintiff at the rate of sixty-five per cent of his average weekly wages for four hundred weeks under the Workmen's Compensation Law of Louisiana. Act 20 of 1914 and its amendments. On receipt of this letter, the Safety Casualty Company sent plaintiff's attorneys a notice of suspension of payments in any amount whatsoever and the Industrial Accident Board of Texas was notified to that effect.
It appears that after plaintiff had been treated for his injury at Kermit, Texas for some weeks, it was suggested to him that he be removed to a hospital with better facilities at Big Springs, Texas, but he requested instead, that he be sent to Lake Charles to be treated by Dr. Holcomb. Some time during November, 1939, Dr. Holcomb performed an operation on his leg and he was kept in a cast for about six weeks. Several months later he was sent to San Antonio, Texas, to be examined by Dr. Amos Graves, and on October 16, 1940, he wrote a letter which he addressed to the "State Board of Compensation, Austin, Texas" in which he stated that Dr. Graves had advised him to undergo further operations on his leg and he would like to know what effect his refusal to submit to such operations would have on his compensation payments. He also made some inquiries regarding a reasonable settlement for his injury.
All of this seems to have prompted the Industrial Accident Board to have a hearing of his case and accordingly on November 3, 1940, plaintiff was notified that a hearing would be held on November 19, 1940. At the same time he was furnished with a form calling for an affidavit and statements in support of his claim. He did not file the form and on November 23, 1940, was requested by letter to do so. On December 5, 1940, his attorneys wrote the Board advising that the matter of his claim had been turned over to them for attention and asked for a short delay in order that *Page 111 
they might consult a Texas attorney with regard to the matter. The Board had, however, on December 3, 1940, rendered a decision in the case awarding compensation at the rate of $11.97 per week and its reply to the letter of the plaintiff's attorneys was to notify them to that effect. A copy of the award as made was also sent them. Neither plaintiff nor his attorneys had any further communication with the Board and it is shown that unless an appeal was taken within twenty days from the date of the award, the matter became final. Plaintiff however consistently refused to accept payments made under the award and on December 18, 1940, his attorneys filed the present proceeding in the district court of Calcasieu Parish claiming that he is entitled to recover compensation at the rate of sixty-five per cent of his average weekly wages, or $20 per week, for four hundred weeks, on the ground that the contract of employment under which he was engaged and worked at the time of his injury, was entered into in the State of Louisiana and that his rights to compensation thereunder are therefore governed by the Workmen's Compensation Law of this state. Payments amounting to $1,470 are acknowledged in the petition and judgment is asked for in the sum of $8,000 payable in four hundred weekly installments of $20 each, subject to credit for the full amount heretofore paid. It was shown that the Safety Casualty Company does not carry the Magnolia Petroleum Company's compensation insurance for the State of Louisiana and therefore judgment is sought against the latter company alone.
The defendant first filed exceptions to the jurisdiction of the district court of Calcasieu Parish, ratione materiae, of no right or cause of action and also a plea of estoppel. These were all filed on the same day. Several days afterwards defendant filed another exception of no right of action and an amended exception of res adjudicata. All of these exceptions and pleas were tried and submitted together in the lower court and were all overruled. The defendant applied to the Supreme Court for writs of certiorari and prohibition but these were refused on the ground that the remedy was by appeal from final judgment in the event the case was decided adversely to the defendant.
Under reservation of its various pleas and exceptions the defendant then filed its answer in which it admitted the accident and plaintiff's resulting injury and that he was paid compensation in the amount of $1,470. Most of the issues raised under the former pleas were again presented and in addition plaintiff's present disability was denied. Pleading in the alternative, defendant alleged that at plaintiff's direction, and with his consent, it had incurred necessary medical, surgical and hospital expenses in his behalf in the sum of $1,095.62 and that in the event there should be judgment rendered in his favor, it is entitled to an offset in the sum of $845.62 which is the amount it has paid in excess of the maximum of $250 required to be paid for such services under the Workmen's Compensation Law of Louisiana.
After trial on the merits in the lower court there was judgment in favor of the plaintiff awarding him compensation at the rate of $20 per week beginning May 25, 1939, for a period not to exceed four hundred weeks, subject to a credit of $1,470 for compensation already paid. The defendant's alternative plea for an offset of $845.62 was rejected. From that judgment the defendant is prosecuting the present appeal in which it re-urges all of its former pleas and exceptions as well as those issues presented on the merits.
The most important plea, we think, and apparently the one most seriously urged by the defendant, is that of res adjudicata. In it may be said to be involved the plea to the jurisdiction of the court ratione materiae and the exception of no cause or right of action as well, as one of the questions raised under it, is whether or not the contract of employment between the plaintiff and the defendant is a Louisiana contract and as such governed by the Workmen's Compensation Law of Louisiana, which is a dominant and controlling issue under all the other pleas mentioned. If the contract is a Louisiana contract then of course plaintiff has a cause of action in a Louisiana court and such court has jurisdiction of the case but under the pleas of res adjudicata it is further contended that the plaintiff having gone before the Industrial Accident Board of Texas to have his claim adjudicated and the award of that Board having now become final, the ruling of that Board is entitled to the full faith and credit that one State must give to the judicial proceeding of another State under Section 1 of the Article 4 of the Constitution of the United States. *Page 112 
Under the facts relating to plaintiff's employment on the particular job he was working on at the time of his injury, we believe that the district judge was correct in holding that the contract between him and his employer was a Louisiana contract, and that being so, both parties were subject to the provisions of the Louisiana compensation statute. Plaintiff is and was at the time, a resident of, and domiciled in this State, and his employer is and was at the time extensively engaged in business in this State also. All their employment relations heretofore, with the single exception of one instance when plaintiff had been temporarily sent to Texas, were confined to Louisiana. If it be assumed that his cashing in of benefits under the annuity insurance plan carried by his employer, and which after all was a purely voluntary plan on its part, constituted a termination of their contractual relations, it can as well be stated that when his services were again solicited for the job on which he was injured, that that was a resumption of those same relations as indeed they had several times before been resumed under the same conditions, namely, that he could be placed at work either in Louisiana or in Texas. For this last job he was contacted, as before, in Louisiana by one of the employer's Louisiana representatives and was sent to its Louisiana office to get his work record, where they were kept, and very probably if the report of his physical examination which also was kept in that office had been available at the time he would not have had to undergo another such examination in Texas.
There was nothing to show that the job he was to perform in Texas was to be any more permanent than any of the other jobs he had been engaged on before and the fact that he and his wife did not move any of their belongings with them indicated clearly that it was not their intention to there reside permanently. We have therefore just the converse of the situation which was found under the facts in the case of McKane v. New Amsterdam Casualty Company, La.App., 199 So. 175, so strongly relied on by the defendant. That case is authority however to the effect that in seeking to ascertain the law of which State is to apply to a given case, all of the facts and circumstances should be examined with the view of discovering the true intent of the parties. In the present case, taking into account the method under which the parties had acted from the very beginning of their relations, the way in which they severed and resumed those relations, the nature of plaintiff's jobs which were always temporary, and his proven intention not to reside permanently in the State of Texas where this last job was to be performed, we are led to the conclusion that this work like all of his previous jobs was to be a temporary one, and that to all intents and purposes the parties never having expressed themselves to the contrary, by its very provisions, their contract was presumed to have been made under the Workmen's Compensation Act of Louisiana, § 3, Par. 1, Act 20 of 1914. As such that act had extra-territorial effect and notwithstanding the fact that the employee was injured in another State, his rights and the employer's liabilities are governed by its provisions. See Hargis v. McWilliams Co., 9 La.App. 108, 119 So. 88, and numerous other cases cited therein.
The district judge held that as the contract of employment arose under the Louisiana law and the rights of the parties were to be governed by that law, the Industrial Accident Board of Texas was without jurisdiction and therefore the award made under its ruling was a nullity.
He differentiated the case from others that were cited in brief of counsel for the defendant and in which the jurisdiction of a foreign tribunal was recognized on the ground that in those cases the plaintiff had sought his own forum in such tribunal, whereas here the plaintiff did not seek the Texas courts for the adjudication of his claim. As he held that the award made under the Texas proceeding was a nullity, he naturally concluded that it could be disregarded by a Louisiana court the same as could a Texas court disregard a judgment of a Louisiana court which was likewise a nullity, and therefore the full faith and credit clause of the Federal Constitution which had been invoked by the defendant did not apply.
We do not agree with the learned district judge to the extent that because the contract of employment arose in Louisiana the Industrial Accident Board of Texas was without jurisdiction to entertain the claim for compensation, nor can we agree that plaintiff did not at least voluntarily *Page 113 
participate in the proceedings before that Board and thereby became a party to the same. It is conclusively shown that the Texas law, Vernon's Ann.Civ.St. art. 8306 et seq., vests the Industrial Accident Board of the State of Texas with jurisdiction in cases of compensation involving injuries sustained by employees in that State and who are even only temporarily employed therein, and it is conceded that all proceedings before that Board and the awards made by it have the same force and effect as proceedings before and judgments rendered by courts of competent jurisdiction in that State. The vital and important question therefore is what effect must the Louisiana court give to the ruling under which the award was made.
We recognize that there are decisions which seem to support the plea of res adjudicata filed by the defendant in this case, notably the cases of Martinez v. W.G. Fritz Co., Inc., 165 A. 873, 11 N.J.Misc. 399, and DeGray v. Miller Bros. Construction Company, 106 Vt. 259, 173 A. 566, both of which are cited in brief of counsel. Ætna Life Insurance Company v. Menees,46 Ga. App. 289, 167 S.E. 335, also seems to be authority in favor of the plea. The first two of these decisions seem to be based on the ground that only one recovery or satisfaction should be had for one or the same cause of action. In our research however, we find that as long ago as the year 1916, in the case of Gilbert v. Des Lauriers Column Mold Company, Inc., 180 App. Div. 59, 167 N YS. 274, 275, the court had under consideration the question of the effect which the act of an employee having invoked the benefit of a foreign compensation statute and having received payments thereunder would have on his claim for compensation before the court of the State under whose law the contract of employment arose, and it was distinctly held that the fact that he had been induced to invoke the foreign statute in the first instance did not deprive him of his right to have the laws of his contract of employment enforced in the manner provided by law, and it having been shown that the insurance carrier had been credited with the amount it had paid under the provisions of the foreign statute it was "not in law aggrieved."
True it is that in that decision there is no mention made of the full faith and credit clause of the Federal Constitution but in pursuing the matter from that point of view we find a decision of the Supreme Court of the United States in which the matter is discussed quite at length. That is the case of Alaska Packers Association v. Industrial Accident Commission, 294 U.S. 532, 55 S.Ct. 518, 523, 79 L.Ed. 1044. The case is annotated in 100 A.L.R. at page 1149.
The employee in that case was injured in Alaska while working for the employer under a contract of employment which arose in California. The employee was an alien and did not even reside in California. The contract of employment recited that he had elected to be bound by the Alaska Workmen's Compensation Law and it stipulated that the parties should be subject to and bound by the provisions of that statute. The California Workmen's Compensation Act contained a provision which made its terms applicable to employees who suffered injuries without the territorial limits of the state where he was a resident thereof and the contract of hiring had been made therein. The Supreme Court of California had by its ruling given effect to the statute of that state in preference to the Alaska statute and, in so doing, the Supreme Court of the United States held that it had not violated the full faith and credit provision of the Federal Constitution. The annotation referred to states that "the decision is based on the ground that where each state has a right to insist upon the application of its own law, the question as to which law should be applied must be determined according to which of the two states has the preponderance of interest in the transaction." The opinion itself, after stating that the subject of inquiry is whether the full faith and credit clause required the State of California to give effect to the Alaska statute rather than its own, contains this rather positive assertion: "It has often been recognized by this Court that there are some limitations upon the extent to which a state will be required by the full faith and credit clause to enforce even the judgment of another state, in contravention of its own statutes or policy." (Italics ours.) Later on we find the court stating: "Prima facie every state is entitled to enforce in its own courts its own statutes, lawfully enacted. One who challenges that right because of the force given to a conflicting statute of another state by the full faith and credit *Page 114 
clause, assumes the burden of showing, upon some rational basis, that of the conflicting interests involved those of the foreign state are superior to those of the forum. * * *
"We need not repeat what we have already said of the peculiar concern of California in providing a remedy for those in the situation of the present employee. Its interest is sufficient to justify its legislation and is greater than that of Alaska, of which the employee was never a resident and to which he may never return. Nor should the fact that the employment was wholly to be performed in Alaska, although temporary in character, lead to any different result. It neither diminishes the interest of California in giving a remedy to the employee, who is a member of a class in the protection of which the state has an especial interest, nor does it enlarge the interest of Alaska whose temporary relationship with the employee has been severed. The interest of Alaska is not shown to be superior to that of California. No persuasive reason is shown for denying to California the right to enforce its own laws in its own courts, and in the circumstances the full faith and credit clause does not require that the statutes of Alaska be given that effect."
In the present case, the interest of Louisiana appears to us to be even greater than was that of California in that case as the employee is a citizen of this state, domiciled and residing here. His employment in Texas, as shown, was to be only temporary and from the moment of his injury his relationship with that state certainly was as much at an end as was that of the injured employee with Alaska in the other case. The employer's business in Louisiana, although probably not as extensive, was as important as was its business in Texas, and above all, in the contract of hiring there was no intimation whatever and much less any stipulation that the parties intended to be bound by the provisions of the Texas Workmen's Compensation statute.
Whilst the court was concerned in that case with the application of the full faith and credit clause in relation to the respective statutes of the two states involved, it is significant that it predicated its remarks by referring to the limitations that have been recognized upon the extent to whicheven the judgment of one will be enforced by another state in contravention of its statute and policy. It would seem but natural that the same limitations would apply to judgments of courts and rulings of administrative boards, because after all, such judgments and rulings can have no greater force and effect than the very laws themselves under which they are rendered.
In the case of Salvation Army v. Industrial Commission,219 Wis. 343, 263 N.W. 349, the court had before it practically the same plea as is here presented. The employee, who had been hired by the Salvation Army in Illinois to do work in the State of Wisconsin, died as a result of injuries sustained by him while performing such work in that state. The widow filed a claim for compensation in Illinois, and was awarded $3,200 by the Industrial Commission of that state. She had, a few days before filing her claim in Illinois, also made an application to the Industrial Commission of the State of Wisconsin. The record contained a stipulation to the effect that the employer was subject to the Wisconsin law, that the relationship of employer and employee existed at the time of the injury and that the accident happened in Wisconsin.
The jurisdiction of the Wisconsin Industrial Commission was challenged on the ground that the claim for compensation had been adjudicated and determined by the Illinois Commission. The plea was rejected and the award made under the Illinois law was held to be no bar to the proceedings under the Wisconsin law; credit however was given for the former award. The test as apparently applied seemed to relate to the status of the deceased as an employee in the State of Wisconsin, and as he was held to have been subject to the compensation acts of both states, the court of Wisconsin, conceding the jurisdiction of the Illinois courts to determine the widow's right under the act of that state, claimed the same jurisdiction to determine her rights under its own act. Under some of its former rulings the court held that the full faith and credit clause could only be invoked where the court of the other state had jurisdiction to effect proceedings under the Wisconsin act. Finally, the court quoted with approval the following pertinent sections from Restatement of the Law under the title Conflict Of Laws Relating to Workmen's Compensation Cases: *Page 115 
"Section 402 — Proceedings may be brought in a state under the Workmen's Compensation Act in that state, if it is applicable, although act of another is applicable"; and "Section 403 — Award already had under the Workmen's Compensation Act of another state will not bar a proceeding under an applicable act, but the amount paid under a prior award in another state will be credited on the second award." This we take to be the latest and correct statement of what the law is on the subject, and guided by that authority as well as whatever else has been stated by us, we hold that the plea of res adjudicata was properly overruled in the court below.
The plea of estoppel is based on the proposition that the plaintiff having accepted the payments made and having also accepted medical fees in excess of the amount provided for under the statute, he is barred from further proceeding with his claim. With regard to whatever payments he has accepted in the way of compensation he has voluntarily given credit for the same in his petition herein, and what he is asking now, is for further payments he claims he is entitled to receive under the Louisiana law. With regard to the excess claimed to have been paid for medical fees, that is an amount which plaintiff himself did not personally receive and whether defendant is entitled to any relief it would be in the nature of a further credit which can only be determined on the trial of that question on the merits. The plea of estoppel was therefore also correctly overruled.
On the merits of the case we find no difficulty in agreeing with the trial judge that from the testimony that has been offered, it is evident that the plaintiff is in no condition to perform the work of a fireman or rough-neck on and around an oil-derrick. At the time of the trial, more than two years after the accident, he was still walking with a decided limp, his right leg being approximately one inch shorter than the other. He had a curvature of the spine and a tilting of the pelvis. He could not flex his leg at the knee joint beyond a sixty degree angle and besides, his ankle was swollen and stiff. His duties required him to be active on the floor of the derrick and to climb up to the top of it as the occasion demanded. Whilst some expert witnesses for the defendant expressed the opinion that the exercise brought on by work might be beneficial, we do not understand them to mean that in his present condition he could satisfactorily perform such duties as are required of one engaged in his trade. That is the kind of work which, by his status in life, his training and experience, and his education, he is fitted for, and if by reason of his injury he cannot perform all the tasks and duties incident to it, he has to be considered as totally and permanently disabled and entitled to compensation as such. McCain v. Fohs Oil Company et al., La.App., 6 So.2d 197; Ingram v. Meridian Lumber Company, La.App., 178 So. 187.
On the plea of off-set for the sum paid by defendant in excess of that stipulated in the compensation statute for medical expenses, we find that the compensation law itself makes no provision for the deduction of any amount so paid. The employer's remedy in such cases, is for him to obtain the consent of the employee before incurring excessive charges in his behalf. Delaney v. Ferd. Brenner Lumber Company, 154 La. 156, 97 So. 349. There seems to be some question as to whether an express consent is required or whether it may be implied. In Nichols v. Tall Timber Lumber Company, La.App., 145 So. 691, the court held that in the absence of any specific provision in the compensation statute, the matter was one of general law whereunder consent may be either express or implied. But even so, in that case the court stated that the deduction should only be allowed where consent is clearly proved. That impresses us as being a correct interpretation to be placed on the matter, but under the testimony in this case we find no such proof of consent which would justify the deduction claimed.
We think that the judgment appealed from correctly disposes of all the various issues presented in the case and for the reasons herein stated it is affirmed at the costs of the defendant, appellant herein. *Page 116