### McKANE v. NEW AMSTERDAM CASUALTY CO. et al.

### No. 17449.

Court of Appeal of Louisiana. Orleans.

Dec. 16, 1940.

Rehearing Denied Jan. 13, 1941.

Writ of Certiorari Denied March 3, 1941.

Henriques & Mayo, of New Orleans, for appellants.

St. Clair Adams & Son, of New Orleans, for appellee.

McCALEB, Judge.

The plaintiff, Mrs. Hugh J. McKane, brought this suit against Stein-Hall Manufacturing Company, employer of her late husband, Hugh J. McKane, and New Am-

sterdam Casualty Company, the compensation insurance carrier of Stein-Hall Manufacturing Company, to recover compensation under the provisions of the Louisiana Employers' Liability Act, Act No. 20 of 1914, as amended, for the death of her husband, who was killed in an automobile accident near Ruston, Louisiana, while engaged in the performance of his duties as an employee for the Stein-Hall Manufacturing Company.

The defendants, conceding that McKane was employed by Stein-Hall Manufacturing Company, that his employment was hazardous within the contemplation of the Workmen's Compensation Law (in that his duties required him to drive a motor vehicle), and that he met his death while engaged in the performance of work for his employer, resisted liability to the plaintiff under the Louisiana Employers' Liability Act on the following grounds: (1) that, since McKane entered into the contract of employment with Stein-Hall Manufacturing Company in the State of Illinois, its liability to plaintiff is governed solely by the laws of that State and that the Louisiana courts have no jurisdiction in the premises; and (2) that, alternatively, plaintiff is without a right of action under the Workmen's Compensation Law of this State.

The case was tried below on an agreed stipulation of facts and resulted in a judgment in plaintiff's favor for the compensation prescribed by the Louisiana Employers' Liability Act. Wherefore this appeal.

The undisputed facts of the case, which are fully set forth in the pleadings and in the stipulation of fact entered into by the parties litigant, exhibit the following: Stein-Hall Manufacturing Company, Inc., is an Illinois corporation domiciled in the City of Chicago and is engaged in the business of manufacturing starch and food sundries. Hugh McKane was first employed as a salesman for this corporation, under a verbal contract entered into in the City of Chicago in August, 1913, to sell the products of the company anywhere in the United States. In 1925, McKane was sent to Detroit to manage the branch office of the corporation in that city. He made Detroit his home and remained there in the capacity as manager of the branch office until April 3, 1926, at which time he resigned his position and went into business for himself. On August 2, 1930, he again became an employee of the Stein-Hall Manufacturing Company, being employed by verbal contract as a salesman to travel any place in the United States. From that time until January 1, 1935, he worked out of Chicago as salesman of the company. On January 1, 1935, the corporation opened a branch office in New Orleans and McKane was called in off the road and instructed to go to New Orleans as manager of the branch office. At that time, he was informed by a Mr. Leverone, General Manager of the corporation, that he was to stay a year in New Orleans and, at the end of the year, if he, McKane, liked it, he could remain there permanently. After a year's time McKane reported that he liked New Orleans and the company confirmed him as manager of its New Orleans branch and paid the expenses attendant to moving his household effects from Illinois to New Orleans. McKane thereupon established a domicile in New Orleans and purchased a home in that city where he lived until the date of his death.

The territory, over which he had jurisdiction as manager of the company's branch office in New Orleans, consisted principally of the States of Arkansas, Louisiana and Mississippi and as far north as Ohio. As manager of the branch office, he had the authority to hire and fire his office help, which consisted of one stenographer. He was required to travel in the territory over which he was given charge and, for this purpose, he used an automobile which was supplied by his employer. McKane was paid by check from the Chicago office of the corporation the sum of $125 per week until February, 1939, when his salary was raised to $140 per week. His employer directed him to keep in constant contact with the Chicago office by telephone and he was also required to report personally to the Chicago office four times yearly.

In pursuance of his duties, McKane, in January, 1940, drove the automobile assigned to him to Camden, Arkansas, for the purpose of contacting a customer of his employer. While returning to New Orleans from the trip, the automobile which he was driving collided with a freight train some five miles north of Ruston, Louisiana, and he died of the injuries he received in the accident.

At the time of McKane's death, the Stein-Hall Manufacturing Company had taken out a policy of compensation insurance with the defendant, New Amsterdam Casualty Company, providing coverage protecting the company for injuries sustained by its

Illinois employees. This policy, which was issued in Illinois, contains an endorsement which covers employees of the company working in Louisiana, Michigan and Missiouri. And in the stipulation of fact it is shown "that the said Stein-Hall Manufacturing Company paid premiums insofar as Hugh McKane was concerned at Louisiana rates, * * *".

Prior to his death, McKane was married to the plaintiff, who resided with him at his domicile in New Orleans. He left no other lawful dependents but he and his wife had the custody and were taking care of his illegitimate minor child, Gloria McKane (who is alleged to be the issue of Hugh McKane and one Margaret Colbert). On February 4, 1940, shortly after McKane's death, Margaret Colbert, appearing as mother and best friend of Gloria McKane, filed a petition with the Industrial Commission of the State of Illinois, making claim for compensation under the Workmen's Compensation Law of Illinois, Ill.Rev.Stat. 1939, c. 48, § 138 et seq. Thereafter, on March 20, 1940, Stein-Hall Manufacturing Company appeared before the Industrial Commission of the State of Illinois and filed a petition against Mrs. Iris McKane, plaintiff in this suit, for adjustment of its liability as to her under the Illinois statute. In the meantime, on February 24, 1940, plaintiff had filed the present action against Stein-Hall Manufacturing Company and its compensation insurance carrier for the recovery of compensation under the Louisiana statute.

It will be observed from the foregoing that the main question, which we are called upon to determine, is whether the defendants are liable to the plaintiff under the Louisiana Employers' Liability Act or whether plaintiff's exclusive remedy is under the Illinois Compensation Law.

The defendants have filed a plea to the jurisdiction of the court. We find no merit in this plea since the defendants, although foreign corporations, are doing business within the State of Louisiana and have appointed agents in this State for the service of process. Obviously, the contention that, because McKane was employed in Illinois and that therefore plaintiff's rights are determinable solely under the Illinois Compensation Law can have no bearing on the jurisdiction of the courts of Louisiana to pass upon the question as to whether the plaintiff is entitled to receive the compensation prescribed by the Employers' Liability Act of this State. As we view it, the defense interposed to plaintiff's suit is properly addressed for consideration on the exception of no right of action or upon the merits of the case.

The contentions of the defendants present for our consideration and judgment many questions concerning the rules governing the conflict of laws and the interpretation and effect to be given to statutes providing for relief to injured employees—and, in approaching a discussion of these matters, it is pertinent to set forth certain fundamental propositions of law, which are not open to dispute.

The Illinois Workmen's Compensation Act, Ill.Rev.Stat.1939, c. 48, § 138, is an elective statute, providing: "That an employer in this State, who does not come within the classes enumerated by section three (3) of this Act, may elect to provide and pay compensation for accidental injuries sustained by any employee * * *"

The statute, in addition, has extra-territorial effect for, in Section 5, Subsection 2 thereof (section 142), it is made to apply to "every person in the service of another under any contract of hire, express or implied, oral or written, *including persons whose employment is outside of the State of Illinois where the contract of hire is made within the State of Illinois, * * *"*. (Italics ours.)

The Louisiana Employers' Liability Act is likewise an elective statute insofar as private industries are concerned. See Philps v. Guy Drilling Co., 143 La. 951, 79 So. 549; Cuna v. Elton Lumber Co., 148 La. 1097, 1098, 88 So. 493; Haven v. Munson, La.App., 169 So. 819, 820, and Mayer on Workmen's Compensation Law in Louisiana, pages 8 and 10. Although there is no express stipulation contained in the statute to the effect that it shall have extraterritorial jurisdiction, it has been consistently held by our courts that, if the contract of employment is made within this State, the law will apply even though the employee was injured in another State or in a foreign country. See Hargis v. McWilliams Co., Inc., 9 La.App. 108, 119 So. 88, Festervand v. Laster, 15 La.App. 159, 130 So. 634, and Selser v. Bragmans Bluff Lumber Co., La.App., 146 So. 690. And the Supreme Court of the United States has declared that the State courts have power to grant compensation to employees, locally employed, for injuries received outside of its borders. See

Bradford Electric Light Co., Inc. v. Clapper, 286 U.S. 145, 52 S.Ct. 571, 76 L.Ed. 1026, 82 A.L.R. 696, and Alaska Packers Ass'n v. Industrial Accident Commission, 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044.

It is also not to be doubted that the rights and obligations of the employer and employee under the Workmen's Compensation Laws (where the statute is elective) arise solely out of the contract of employment. In State Industrial Commission of State of New York v. Nordenholt Corp., 259 U.S. 263, 42 S.Ct. 473, 474, 66 L.Ed. 933, 25 A.L.R. 1013, the United States Supreme Court said that "An award under the Workmen's Compensation Law is not made on the theory that a tort has been committed; on the contrary, it is upon the theory that the statute * * * is read into and becomes a part of the contract * * *". This view has been adopted in Louisiana. See Labourdette v. Doullut, etc., Co., 156 La. 412, 100 So. 547; Legendre v. Barker, 5 La.App. 618, 621; Burson v. Ohio Oil Co., 6 La.App. 739, and Dourrieu v. Board of Commissioners of Port of New Orleans, La.App., 158 So. 581.

With these fundamental principles in mind, we now consider the contentions made by the defendants. It is said that, since the original contract of hire between McKane and Stein-Hall Manufacturing Company was executed in the State of Illinois, the Workmen's Compensation Law of Illinois was written into that contract and that the rights and obligations of the parties became thereby governed by the Illinois statute. It is also maintained that the fact that McKane was later sent by his employer to Louisiana to conduct its affairs in this State, established a domicile here and was killed here in the performance of his duties, does not make the defendants amenable to the Louisiana Compensation Law because our statute is an elective one and is applicable only in cases where the contract of employment is made within the borders of this State. Defendants concede that, if the Louisiana statute provided that it should apply to all accidents occurring within the course of the employee's work here in Louisiana, it would then be applicable and it would make no difference where the contract was made. But counsel point to the jurisprudence of this State holding that the Louisiana law is elective and that it applies to all contracts of employment made within the State

and they maintain that, conversely, it should not be held to govern contracts of hiring made outside of the State. In this argument, counsel rely upon our decisions in Hargis v. McWilliams Co., Inc., and Selser v. Bragmans Bluff Lumber Co., supra.

In the Hargis case, the plaintiff, a resident of Louisiana, was hired by the defendant, a Louisiana corporation, to go to the State of Florida and there engage in work as an engineer on a floating steel dredge operated and controlled by the defendant. While in performance of·his duties in Florida, the plaintiff was injured and he later brought suit in Louisiana under the Employers' Liability Act of this State. In holding that our workmen's compensation statute had extraterritorial effect where the contract of employment has been made within this State, we observed [9 La.App. 108, 119 So. 89]: "It matters not where the work is to be performed; the question is where was the contract made. ·If the law of the place where the contract was made fixes liability, the liability follows the employer wherever the work is done. Any other view would leave the workman without remedy or relief contrary to the object and spirit of the law and against the principle that the compensation law must be interpreted liberally, in a sense favorable to the workman."

In Selser v. Bragmans Bluff Lumber Company, supra, the employee, a resident of Louisiana, was hired by written contract in Louisiana to work as a stenographer for the defendant, a Louisiana corporation, which was engaged in the logging and lumber business in this State and also in the Republic of Nicaragua. For his services, which were to be performed in Nicaragua, Selser was to receive a salary of $150 per month. In accordance therewith, the employee worked for some time in Nicaragua and he was later promoted by the defendant company to the position of general inspector of all of the company's equipment, tools and properties in Nicaragua at an increased salary of $225 per month. While in the performance of his duties as inspector, Selser was killed and his legal dependents brought suit in Louisiana to recover compensation under the Workmen's Compensation Law of this State.

The defendant there contended that, although the contract was executed in Louisiana, it was contemplated that the work of

the employee would be performed solely in a foreign country and that, under the jurisprudence, the law of the place of performance, rather than that of the place where the contract was made, should govern the rights and obligations arising out of the contract. After reviewing many analogous authorities, we concluded that, since the contract of employment was executed in Louisiana, the Employers' Liability Act of this State was applicable.

Counsel for the defendants assert that the Hargis and Selser cases are full authority for the proposition for which they now contend and they argue that it will be seen from the decisions in those matters that the only question of importance in cases of this type relates solely to the place where the contract of hiring was made. In other words, counsel persist that, since we have concluded in the Hargis and Selser cases that the Louisiana Employers' Liability Act is to be given extraterritorial jurisdiction and that it will be enforced by our courts even though the services are to be performed and the accident occurs in another State, it follows that, if the contract is made outside of Louisiana for services to be performed within Louisiana, we should not apply the Louisiana Workmen's Compensation Law in determining the rights and obligations of the parties.

We cannot agree with counsel that the Hargis and Selser decisions control the situation here to the extent that they force the conclusion that all contracts of hiring made outside of Louisiana for work to be performed exclusively within the borders of this State will be governed by the laws of the State where the contract was made irrespective of all other considerations. The decisions depended upon merely hold that, if the contract is made in Louisiana, the Workmen's Compensation Law of this State will be given extraterritorial effect and will be applied by the courts of this State notwithstanding that the work was being performed and the accident occurred in a foreign State. We do not consider that the cases are authority for the proposition that, merely because a contract of employment was executed in this State for services to be performed entirely in another State, the place of execution will be applied where there is evidence indicating a plain intent on the part of the contracting parties that the laws of the place of performance should govern. On the contrary, the Second Circuit Court of Appeal of this

State has held otherwise in the cases of Durrett v. Eicher-Woodland Lumber Co. et al., 19 La.App. 494, 136 So. 112, 140 So. 867, and Abood v. Louisiana Oil Refining Corp., 155 So. 484.

In Durrett v. Eicher-Woodland Lumber Company, supra, it appeared that the plaintiff, a Louisiana resident, had been employed by the defendants to perform work for them at their lumber mill situated in the State of Mississippi. While engaged in this work, the employee was injured and he brought suit under the Louisiana Workmen's Compensation Law to recover compensation. The question presented to the court was whether the contract of hiring was executed in Louisiana or in Mississippi. On first hearing, it was found that the contract was made in Louisiana; that the Employers' Liability Act had extraterritorial effect and that the defendants were amenable to the provisions of the statute. A rehearing was granted and, after further consideration of the matter, the court found that there was some doubt as to the place where the contract was made but finally concluded that it was probably entered into in the State of Mississippi. But the court further went on to say that the place where the contract was actually executed was of little importance as it was of the opinion that, since the industry where the plaintiff was to perform his services was located in Mississippi, the Louisiana Employers' Liability Act did not govern the rights and obligations of the parties. It was expressly stated that the place where the contract of employment was entered into is not decisive in determining whether the Compensation Law of this State is applicable. It was found, as a fact, that, while the defendants had formerly done business in Louisiana, they had moved their plant to the State of Mississippi and it must have been contemplated by the employer and employee that their rights and obligations would be governed by Mississippi law, the place where the contract was performed.

In its decision in the Durrett case, the court discusses the conclusions reached by us in Hargis v. McWilliams Co., supra, and distinguishes that case on the ground that, there, the employee had been sent to Florida temporarily to perform some special repair job of work; that his employer did not go to Florida and set up a business as a going concern, but that his employer's business remained established and located in Louisiana.

In Selser v. Bragmans Bluff Lumber Company, supra, we had occasion to discuss and distinguish the decision in the matter of Durrett v. Eicher-Woodland Lumber Company, supra. There, we concluded that the court had found as a fact that the contract of employment was made in the State of Mississippi. We now find, however, that the same court, in a later case (Abood v. Louisiana Oil Refining Corporation, supra), had occasion to review its former decision in the Durrett case and, in commenting upon what we had to say about that matter in Selser v. Bragmans Bluff Lumber Company, supra, it declares that we were mistaken in concluding that it had held in the Durrett case that the contract of employment was entered into in Mississippi.

In the Abood case, it appeared that the plaintiff had been employed by the Louisiana Oil Refining Corporation in the capacity of shipping clerk in its warehouse in Bossier City, Louisiana. This employment was discontinued on August 15, 1930, and plaintiff later called at the office of the company to obtain another job. He was told by the service manager of the company that there were no jobs available in Louisiana but that he could obtain regular employment at Jackson, Mississippi, in the warehouse of the Louisiana Oil Corporation, a separately incorporated concern doing business exclusively in Mississippi. The plaintiff thereupon went to Mississippi and obtained employment from the Louisiana Oil Corporation. While engaged in this employment, he was injured and he subsequently brought suit against the Louisiana Oil Refining Corporation to recover compensation under the Louisiana Employers' Liability Act, contending that the contract of employment had been made in the State of Louisiana.

After considering the case, the court found, as a fact, that the contract of employment was not entered into in Louisiana but that it was made in Jackson, Mississippi, with the Louisiana Oil Corporation, which was a separate and distinct entity, although all of its stock was owned or controlled by the defendant company. Aside from this, however, the court expressed the view that, even though the contract of employment had been made in Louisiana, it would make no difference in the result of the case since the work which was to be performed by Abood in Mississippi was of a permanent nature as distinguished from temporary or transient employment. In other words, the court was of the opinion that a distinction should be made between a case where a Louisiana resident is employed by a Louisiana corporation in Louisiana and is sent into another State for the purpose of performing temporary work and one where the contract of employment contemplates that the employee is to work permanently in another State for his employer in the factory or place of business established by the employer in the foreign State for the conduct of its operations.

It further appears that, in the Abood case, counsel for the plaintiff directed the court's attention to our decision in Selser v. Bragmans Bluff Lumber Company, contending that our holding in that matter was indistinguishable from the facts there under consideration. The court disposed of this contention by stating that, in the Selser case, we found that it was contemplated by the parties to the contract that the work Selser was to perform for the corporation in Nicaragua was of a transient and temporary character "in connection with and incidental to its Louisiana industry; the Nicaragua branch being entirely controlled and managed from the main office in New Orleans." [155 So. 487.]

While we are not entirely in accord with the observation of the Second Circuit Court of Appeal that Selser's employment was of a transient or temporary character, it is certain that his contract did not indicate that his employment in Nicaragua would be of a permanent nature. We think that it is proper to say that, in the Selser case, the parties contemplated the performance of work by Selser in Nicaragua for an indefinite period of time. It could not be regarded as temporary employment in the sense that the employee was sent to Nicaragua to do a particular job or to perform general work at the company's plant there for a limited time and thereafter return to Louisiana and continue his employment in the business of the company here. The employment can, however, be considered as temporary and indefinite as to duration of time because his employer agreed that, while Selser was in Nicaragua, it would provide him with board and lodging and, at the termination of his employment, would pay the cost of his return trip to Louisiana.

It will be seen, from the foregoing discussion of the Durrett and Abood cases,

that the judges of the Second Circuit Court of Appeal are of the opinion that the place where the contract of employment is made is not the sole factor to be considered in determining whether the doctrine of lex loci contractus should be applied. They express the view that, if the work is to be performed in another State and if the parties contemplate that the job will be of a permanent nature, then the law of the place of performance will govern. If, on the other hand, the work is of a temporary or transient nature, the law of the place where the contract was made will be applied.

This court is not in discord with the views of the Second Circuit Court of Appeal. It is true that there are expressions contained in the Hargis and Selser cases which, if taken literally, might convey the impression that it is our opinion that the Louisiana Compensation Law is applicable only to cases where the workman has been employed here in Louisiana. But those expressions should be considered in connection with the questions presented in those particular cases—namely, whether our Compensation Law will be given extraterritorial effect where the contract of employment has been entered into in Louisiana. The decisions merely set forth that a contract of hiring made in Louisiana is subject to the Compensation Laws of this State notwithstanding that the work under the contract is performed in a foreign State and the injury occurs in such State. We did not say that parties in Louisiana, in entering into a contract here for work to be performed in another State, could not provide, either expressly or tacitly, that the Compensation Law of the foreign State would govern in the event the employee is injured in the place where the work is to be done.

In the jurisprudence respecting conflict of laws, it is sometimes broadly stated that the general rule governing the validity and construction of a contract and the rights and liabilities thereunder is that the law of the place of performance applies. On the other hand, in many jurisdictions, the basic rule in force is that the intention of the parties, express or implied, generally determines the law that governs the contract with respect to its nature, validity, obligation and interpretation. See 15 C.J.S., Conflict of Laws, § 11, pages 886 and 890. In Louisiana, the rule has been generally stated to be that the law of the place where the contract is to have effect determines the rights and obligations of the parties. See General Talking Pictures Corp. v. Pine Tree Amusement Co., 180 La. 529, 156 So. 812, American Slicing Machine Co. v. Rothschild et al., 12 La.App. 287, 125 So. 499, and Finance Security Co., Inc. v. Mexic, La.App., 188 So. 657.

We think, however, that, with relation to the applicability of the Workmen's Compensation Law, the better rule is that the intention of the parties to the contract should be the determining factor. And, before resolving whether an employment contract is to be governed by the law of the place where it is made or by the law of the place where it is to be performed, the court should examine all of the facts and circumstances of the case with reference to the nature of the work to be done, the place of performance, the domicile of the parties, etc.—all with a view of discovering the true intent of the parties. If, after investigation, it appears that the parties have indicated, either expressly or tacitly, that their rights and obligations should be governed by the laws of the place of performance, then the court should not hesitate to apply that law to the case.

With these views in mind, we therefore pass on to a consideration of the facts of the instant case. As shown by the stipulation of fact, McKane was employed in Chicago, Illinois, by Stein-Hall Manufacturing Company in 1930 as a salesman to travel for it any place in the United States. There can be no doubt that, as to that employment, the Compensation Law of Illinois, which was written into the contract, was the applicable law no matter where McKane was injured. In 1935, the corporation opened a branch office in New Orleans and McKane was instructed to go to New Orleans where he was to act as manager of the office. At that time, he was informed by the general manager of the corporation that he was to remain in New Orleans for a year and that if, at the end of the year, he liked the new arrangement, he could remain in New Orleans as the permanent branch manager of the concern. This arrangement was of a temporary nature and, in order for it to become a permanent position, McKane had to signify his intention to his employer that he liked the new work. In such circumstances, it may be said that it was neither intended by the employer or McKane that his status as an employee working out of the State of Illinois would be changed and accordingly

if he had suffered injury during that first year, when he was temporarily located in New Orleans, it would be extremely doubtful that the Compensation Law of Louisiana would be applicable.

However, after the expiration of a year, McKane, in accordance with his previous agreement, reported to his employer that he was well satisfied with the arrangement in New Orleans and he was thereupon confirmed by the company as manager of the New Orleans branch of its business. This, we think, constituted a new contract of a permanent nature and that there was accordingly effected a real and substantial change in the previous arrangements between the employer and the employee which was totally different from McKane's original employment as a salesman working out of the company's head office in Chicago.

The parties, at the time this new contract was confected, contemplated that it was to be of a lasting character; that McKane was to move his domicile to New Orleans and make his home in that city. To that end, it appears that McKane not only purchased a house in New Orleans, in which he resided from the date of the new contract until the time of his death, but that his employer aided and assisted him in the change of his domicile by shipping to him at its expense his personal property and household effects from Illinois to Louisiana. Under such circumstances, can it fairly be said that the parties to the agreement contemplated that, in the event McKane met with an accident here in Louisiana, his rights and the company's liabilities would be governed by the Compensation Law of Illinois? We think not. McKane was neither working in Illinois nor out of Illinois. The company had established a branch office in Louisiana and McKane's duties were to run that office and to work out of that office.

It is true that McKane's employer required him to report to the head office of the company in Chicago at certain intervals, but this fact cannot be regarded to mean that he was working in Illinois or that his employer contemplated that the Illinois Compensation Law would be applicable in case he was injured. On the contrary, it appears from the stipulation of fact that, while McKane was working here in Louisiana, his employer took out compensation insurance on him under Louisiana law and paid premiums to its insurance carrier in

accordance with the rates specified by the Louisiana Insurance Commission. Of course, this fact of itself cannot be regarded as a basic reason for saying that the employment contract was governed by the Louisiana Employers' Liability Act but it is, to say the least, an indication of a belief on the part of the company that McKane was considered by it as a Louisiana employee. Then, too, this fact must be considered in connection with the other circumstances of the case, i. e., the kind of employment, the conditions under which the employee was hired, the permanence of the job, the residence of the parties and the business of the employer. When this is done, we think the conclusion is irresistible that, when McKane was installed permanently as the manager of the company's New Orleans office, the parties intended that the rights and obligations flowing from the new arrangement would be governed by the laws of this State and that they tacitly elected to come under the provisions of the Louisiana Employers' Liability Act.

. Counsel 'for the defendants have stated in oral argument and in brief that it would be erroneous for us to conclude (as we have declared) that, when McKane was confirmed as branch manager of the New Orleans office of the Stein-Hall Manufacturing Company, a new contract was made between the parties, which contemplated permanent employment in Louisiana and which was intended by the parties to be governed by the laws of this State. It is said that this identical question has already been otherwise determined by us in the Selser case.

In the Selser case, it appeared that, after Selser had been working for sometime in Nicaragua under his original contract as a stenographer, his position was changed to that of inspector of materials, tools and equipment at an increased salary. The defendant contended that, when Selser's employment was changed from that of stenographer to inspector, it constituted a new contract of employment which was made in Nicaragua and that consequently the Louisiana Employers' Liability Act did not apply to work performed in pursuance of the new employment. In rejecting this argument, we stated that the change in Selser's position was merely a promotion, which had to be approved by the New Orleans office before it became effective and that it did not thereby alter the original contract to

such an extent that Selser forfeited his right to claim compensation under the Louisiana statute.

We are unable to agree with counsel that the facts of the Selser case are parallel with the situation obtaining in the instant matter. When McKane was installed by the company as manager of its branch office in New Orleans, the former temporary arrangement between the parties became permanent and McKane, acting on the belief that such was the case, changed his domicile from Illinois to Louisiana. In the Selser case, the employee not only did not make a change of domicile when he received the promotion but no such change in his status was contemplated by either party to the contract. On the contrary, the original contract, whereby the company had agreed to pay his board and lodging in Nicaragua and his transportation to and from Louisiana and Nicaragua, was in no way abrogated or set aside. The employment as to its indefiniteness of time remained the same and the promotion was not accompanied by the degree of permanency of employment which we find to be present in the instant case.

Moreover, even though we had determined in the Selser case that the employee's promotion was tantamount to the making of a new contract, it would not have changed the result reached in that matter. A distinction should be drawn between an employment of a permanent nature (as in this case) where the employee by reason thereof changes his domicile from the place where the contract is made to the State where the work is to be performed and goes into the latter State with a view of living there and an employment (as in the Selser case), while not actually temporary or transient, is for an indefinite length of time and the employee has no intention of changing his domicile to the place of performance but expects, at the termination of the employment, to return to his home in the State where the agreement was made.

In addition, we think that another clear difference exists between the Selser case and this one with regard to the intention of the contracting parties. In that matter, Selser was to perform work in a foreign country and there was no indication of an intent either on his part or that of his employer that the contract would be governed by the laws of Nicaragua. Conversely, in this case, for the reasons hereinabove pointed out, we feel that there are many circumstances which make the result inescapable that McKane and his employer elected to come under the Workmen's Compensation Law of this State.

Apart from the views we have heretofore expressed, there exists another reason, which is sufficient in itself for the affirmance of the judgment. We find that, even though we should assume that the Compensation Law of Illinois was applicable here, we would be impelled to say that, since the machinery set up by the Illinois Commission for enforcement of its laws is vastly different from that prescribed by our workmen's compensation statute and since certain rights in favor of illegitimate children are granted in Illinois, which are obnoxious to the public policy of this State, we would be unable to enforce the Illinois statute and would refrain from granting the relief prescribed by it. Once we find that we have jurisdiction of the matter and that the laws of Illinois are obnoxious to the public policy of this State, we would have the right and power, under the recent decision of the Supreme Court of the United States in Pacific Employers Insurance Co. v. Industrial Accident Commission, 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940, to enforce our local compensation statute, notwithstanding the provisions of the full faith and credit clause of the Federal Constitution, art. 4, § 1.

In the cited case, the employee of a Massachusetts concern was sent to California to perform temporary work for his employer. While in California, he received injuries in the course of his employment and he made claim before the California Industrial Accident Commission for compensation under the laws of that State. His claim was granted by the commission and the insurance carrier of his employer brought the matter to the courts of that State, contending that, since the contract of employment was executed in Massachusetts, the rights of the employee were governed exclusively by the Compensation Laws of Massachusetts. The Supreme Court of California, 10 Cal.2d 567, 75 P.2d 1058, refused to apply the law of Massachusetts on the grounds that the California statute was compulsory and covered any accident befalling an employee within the borders of the State of California and that furthermore the full faith and credit clause did not require it to enforce the Massachu-

setts statute where it found that the laws of Massachusetts were obnoxious to the public policy of California.

The matter was then taken to the Supreme Court of the United States, where it was held that the full faith and credit clause of the Federal Constitution did not require one State to substitute for its own statute a conflicting statute of another State, even though the statute was of controlling force in the courts of the State of its enactment with respect to the parties affected thereby. The court distinguished the matter from the case of Bradford Electric Light Co. v. Clapper, supra, by stating that, in the Clapper case, "there was nothing in the New Hampshire statute, the decisions of its courts, or in the circumstances of the case, to suggest that reliance on the provisions of the Vermont statute, as a defense to the New Hampshire suit was obnoxious to the policy of New Hampshire." [306 U.S. 493, 59 S.Ct. 634, 83 L. Ed. 940.]

Counsel for the defendants contend that the decision of the Supreme Court in Pacific Employers Insurance Co. v. Industrial Accident Commission, supra, has no bearing upon the question presented in this case. They declare that there is no issue here concerning the applicability of the full faith and credit clause of the Federal Constitution, and that the cited case is clearly distinguishable from this one because the Compensation Act in California is a compulsory statute and not an elective one like the Louisiana Employers' Liability Law. We cannot agree with counsel. While it is true that the Supreme Court, in its opinion, mentions the fact that the California statute is compulsory in that it applies to all accidents occurring within the borders of that State, the decision, as we view it, is not based solely upon that ground. On the contrary, it is our appreciation of the opinion that the court distinctly holds that the State court having jurisdiction of the parties to the action will not be compelled, by reason of the full faith and credit clause, to enforce the law of the State where the employment contract was made where it appears that the law of that State is obnoxious to the public policy of the forum.

Counsel for both litigants have favored us with able and exhaustive briefs in which many authorities are cited from the federal courts and other jurisdictions in support of their respective contentions. And, in supplemental and reply briefs, they have directed our attention to other pronouncements which were not included in the original presentation of the matter. We do not find it necessary to discuss in detail all of the cases relied on since a careful examination of them has disclosed to our satisfaction that they are either distinguishable from the facts of the case at bar or that the views expressed by the courts are in conflict with what we believe to be the correct result to be reached here.

■ Finally, we notice that counsel for the defendants have requested that we remand this case to the lower court for the purpose of taking additional testimony in order to show that the plaintiff has moved her permanent residence from New Orleans to Chicago and that therefore it is of no inconvenience to her to have all of her rights and claims for compensation settled by the Industrial Commission of the State of Illinois. We see no merit in this application since it is our opinion that the contract between McKane and his employer is governed by the Louisiana Employers' Liability Act.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.