This is a suit brought by a widow for herself and her minor child, in which she seeks to recover compensation from the defendant, compensation insurer of her late husband's employer, Southern Pine Inspection Bureau, which will hereinafter be referred to as the Bureau. The demand is for weekly compensation of $20 per week *Page 587 
for 300 weeks beginning February 13, 1943, with legal interest, and for medical and burial expenses.
Plaintiff's husband was employed as a pine lumber inspector and his duties as such required that he work temporarily, at different times, in different states of the Union. He was working in Illinois at the time of his death and was killed in an automobile accident on his return home from a government project on which he had been at work for his employer.
The principal defense to the action is that the contract of employment between plaintiff's deceased husband and his former employer was a South Carolina contract and that as the Louisiana Employers' Liability Law, Act No. 20 of 1914, does not apply, she cannot recover compensation in this State. There is a second defense based on the grounds that the decedent was not killed while acting in the course and scope of his employment but there is a stipulation in the record to the effect that he was fatally injured in an automobile accident while returning to his residence after having performed his day's work on the job on which he was engaged, approximately 30 miles away. He used his own automobile but it is admitted that he was allowed traveling expenses and this, in our opinion, brought him within the rule that an employee who is injured or killed on his way to or from work, where transportation is a concomitant of the contract of hiring, is considered as having been injured or killed within the course of his employment and a claim arising under such circumstances is compensable.
The principal defense presents an issue that involves the facts surrounding the decedent's employment by the Bureau, on the finding of which depends the application of the law of which State governs the contract that existed between them.
The decedent apparently was a young man without sufficient experience, on October 22, 1940, when he first made application for a position with the Bureau. Letters written to him at that time indicate rather strongly that that was the reason he was not then employed. He was then residing in Louisiana near Natchitoches. He was required to fill out the regular form prepared by the Bureau which is styled "Application for Employment, Inspection Department" and which had to be submitted to the New Orleans office as the Bureau's principal office was in that city.
There was quite a bit of correspondence between them always with the result that he was not then employed but he was certainly encouraged into believing that eventually he would be. He finally secured temporary work as a government material inspector on a job which took him to Charleston, South Carolina. In the meantime he kept pressing his application with the Bureau receiving the same sort of encouraging replies to his letters. On December 30, 1941, he again wrote Mr. R.R. Cahal, assistant manager, in charge of the New Orleans office, informing him that the project on which he was then at work was about completed and his employer had informed him that he would be given his immediate release should he be able to find employment elsewhere. On Monday morning, January 4, 1942, in a long distance telephone message, it not being shown with certainty who put in the call, a contract of employment was finally consummated between him and Mr. Cahal, the salary, traveling expenses and other terms having been then agreed upon and, Mr. Cahal states, it was arranged for him to remain in South Carolina in a capacity of training with the other members of their force located there. He states further that the decedent had his family with him at Charleston at that time and so it was very convenient all around for him to enter his training period there. He worked in other states after that and although he passed through Louisiana on two or three occasions, never actually worked in this state unless his attendance at one of the Bureau's conventions in Shreveport can be considered as an incident of his employment. He had not been in Illinois very long but was actually engaged on a project to which he had been assigned by his employer in that state when he was fatally injured on February 13, 1943.
Under the foregoing facts as we have briefly tried to outline them, the district judge held that the contract of employment was not a Louisiana contract and therefore the Workmen's Compensation Law of Louisiana did not apply. He consequently rejected the demand of the plaintiff and from a judgment so decreeing she is prosecuting this appeal.
The rule that "no recovery can be had under the Workmen's Compensation Act of a state if neither the harm occurred nor the contract of employment was made in the state" as laid down in *Page 588 
Restatement of the Law on Conflict of Laws, Chapter 9, § 400, p. 488, prevails in Louisiana. That our compensation statute will be given extra-territorial effect, however, is clearly held in several cases. Selser v. Bragmans Bluff Lumber Co., La.App., 146 So. 690, McKane v. New Amsterdam Casualty Co., La.App., 199 So. 175, and Hunt v. Magnolia Petroleum Co., La.App., 10 So.2d 109. The controlling point at issue therefore is whether the contract of employment in this case was a Louisiana contract or, as held by the learned trial judge, a South Carolina contract because the deceased employee was in that State when he is said to have accepted the offer of employment over telephone.
In Corpus Juris Secundum, vol. 17, p. 813, § 356, under the Title, Contracts, it is stated that, "as a rule," and therefore we take it to be one not without modification, "a contract is considered as entered into at the place where the offer is accepted, or where the last act necessary to a meeting of the minds or to complete the contract is performed." (Italics ours.) In a subsequent paragraph it is also stated that "where a contract is made by telephone, it is regarded as made at the place from which the accepting party speaks." It is pertinent to observe however that the paragraph from which the first quotation has been taken begins with the broad statement that "the place where a contract was made is to be determined in accordance with the intention of the parties." In this connection it is significant to note that in the same work, vol. 15, p. 886, § 11, under the Title, Conflict of Laws, the place of performance of the contract locus solutionis, is also an important consideration but qualified to some extent by what is referred to as the "intention doctrine" which is to effect that while both the place of performance and the place of making have to be taken into consideration, "neither is conclusive, and the question rests on the intent of the parties as disclosed by the whole of the contract." In a subsequent paragraph it is stated that "the intention is to be gathered, if possible, from the circumstances surrounding the particular transaction, it being often said in this regard that neither the place where the contract is made nor the place at which it is to be performed is conclusive as to the law by which the parties intended their contract to be governed, both being merely important indicia of such fact, to be considered with other relevant circumstances."
In a footnote under the section from which the foregoing is quoted, the case of Wilson v. Lewiston Mill Co., 150 N.Y. 314,44 N.E. 959, 55 Am.St.Rep. 680, is cited and quoted from as follows: "As has well been stated, the question must be determined with reference to the facts and circumstances surrounding the parties in each case presented, and the intention of the parties, so far as it is disclosed, must control. The place where the contract is accepted is important. It fixes the time that the minds of the parties met, and the contract was consummated. It does not, however, necessarily determine the place or the law under which the contract must be executed. So, also, is the place important where the contract was talked over, and its substantial details arranged. Yet this, standing alone, may not control, for the place in which the contract is to be executed is of equal importance in determining what must have been the intention and purpose of the parties. The lex loci solutionis and the lex loci contractus must both be taken into consideration, neither of itself being conclusive; but the two must be considered in connection with the whole contract, and the circumstances under which the parties acted in determining the question of their intent."
In McKane v. New Amsterdam Casualty Co., supra [199 So. 182], the court stated that "with relation to the applicability of the Workmen's Compensation Law, the better rule is that the intention of the parties to the contract should be the determining factor. And, before resolving whether an employment contract is to be governed by the law of the place where it is made or by the law of the place where it is to be performed, the court should examine all the facts and circumstances of the case with reference to the nature of the work to be done, the place of performance, the domicile of the parties, etc. — all with a view of discovering the true intent of the parties." In commenting on the McKane case, this court, in Hunt v. Magnolia Petroleum Co., supra, practically committed itself to that doctrine, which we also now say, especially with reference to compensation cases, produces the better rule.
Guided by that rule, and seeking the intention of the parties to the contract *Page 589 
under consideration in this case, in the facts as disclosed and in the surrounding circumstances, we are of the opinion that they had it in their minds, and their purpose was, to have the contract considered as having been entered into in this State and that in relation to the Workmen's Compensation Law, Act No. 20 of 1914, it was to be governed by the Louisiana statute. The negotiations between them started with the plaintiff's deceased husband's application for employment when he resided in this State. The Bureau maintained its principal office at New Orleans, in this State, notwithstanding the fact that it was engaged in business in every State east of the Rocky Mountains. The application for employment was submitted to the New Orleans office and that is the only place where it ever was considered by Mr. Cahal, the assistant manager of the Bureau. It never was rejected but on the contrary, the deceased was always led to believe that eventually it would be accepted. Both parties understood that the employment would carry no permanent assignment to any particular State, just as it turned out after he actually was employed. It was more or less accidental that the decedent found himself in South Carolina when the culmination of all prior negotiations, which had actually never stopped, took place in the long distance telephone conversation he had with Mr. Cahal. We might well assume that he was the one who placed the call and closed the contract at that time and yet we could not hold that that one minor fact, compared to all that had transpired between them before, had the effect of making it a South Carolina contract. Moreover, Mr. Cahal testified that regardless of where their employees worked, their employment was finally approved in New Orleans and that the approval of that office had to be obtained before any nonresident contracts of employment were confected.
Under the method by which it carried on its business all employees of the Bureau, such as decedent was, no matter in which State they worked, were paid their salaries and expenses out of the New Orleans office. From the testimony in the record it is not clear how the compensation insurance was carried but it is definitely shown that all premiums paid by them, or in which they shared, on public liability and property damage insurance covering the automobiles used by their inspectors, were paid out of the New Orleans office. As previously indicated there was no fixed place where the deceased employee, nor any of the Bureau's inspectors, was to perform the services for which he was engaged. Their work was merely temporary at any given assignment. In his case it is shown that in the short period of his employment covering a bit more than a year, the decedent worked in South Carolina, New York, Mississippi and Illinois. It is shown, however, that what reports he made to his employer had to be made to the New Orleans office. Clearly therefore, in this case, the place of performance cannot be used as a determining factor in applying the law of the place of the contract. Considered as a fact, among the many others referred to, it adds weight to the conviction that the intention of the parties was to have their contract treated as a Louisiana contract and as such to be governed, in relation to compensation insurance as well as in other matters, by the Louisiana law.
Our views naturally lead to a different conclusion than that reached by the learned district judge and it follows that the judgment appealed from, which rejected the plaintiff's demand, will have to be reversed.
For the reasons stated it is ordered that the judgment appealed from be and the same is hereby voided, annulled and reversed and it is now further ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Sylvia Warren Williams and against the defendant, the Travelers Insurance Company of Hartford, Connecticut, for the sum of $20.00 per week, for weekly compensation, for a period of 300 weeks beginning February 13, 1943, with legal interest on each weekly installment from maturity, until paid, and the further sum of $150.00 for burial and contingent expenses in connection therewith.
It is further ordered that the defendant pay all costs of this proceeding in both courts. *Page 590