359 So.2d 1051 (1978)
Clifton STAPLETON, Plaintiff-Appellee,
v.
TRAVELERS INSURANCE COMPANY, Defendant-Appellant.
No. 6411.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1978.
Writ Refused July 3, 1978.
*1052 Gold, Little, Simon, Weems & Bruser, Edward E. Rundell, Alexandria, for defendant-appellant.
Craven & Scott, Samuel H. Craven and John W. Scott, Alexandria, for plaintiff-appellee.
Before CULPEPPER, DOMENGEAUX, WATSON, FORET and CUTRER, JJ.
DOMENGEAUX, Judge.
This is a workmen's compensation suit filed by Clifton Stapleton against Travelers Insurance Company, which was the workmen's compensation insurer of plaintiff's employer, Javeler Construction Company (hereinafter Javeler). After a trial on the merits, judgment was rendered in favor of the plaintiff finding him entitled to compensation for total and permanent disability. Defendant has appealed from that judgment and plaintiff has answered the appeal.
The accident, which resulted in this suit being instituted, occurred on September 10, 1976. Plaintiff sustained a back injury while working as a superintendent at his employer's job site in the State of Mississippi. Defendant was paid benefits under Mississippi's workmen's compensation laws at a rate of $84.00 per week from the date of the accident through February 14, 1977. Compensation was discontinued based upon two reports of an examining physician. Suit was filed on March 18, 1977, and served on March 21, 1977. The petition seeks total permanent disability payments at a rate of $95.00 per week under the workmen's compensation laws of the State of Louisiana, plus penalties and attorney's fees. A preference trial date was set for April 4, 1977, in an order attached to the petition. On the date set for the trial, the defendant had not filed an answer. After hearing, a preliminary judgment was entered under the provisions of La.R.S. 23:1316, which awarded benefits in the amount of $95.00 per week for permanent total disability plus medical expenses, penalties, and attorney's fees. On April 11, 1977, defendant filed an answer. On April 14, 1977, defendant filed a petition to annul the preliminary judgment. This was denied. Trial on the merits on April 20, 1977, resulted in a judgment stating that plaintiff's accident was compensable under the Louisiana Workmen's Compensation Law and declaring plaintiff totally and permanently disabled. Plaintiff was awarded the sum of $95.00 per week from September 10, 1976, for an indefinite time in the future, subject to credit for payments already made. The trial court judgment made no mention of penalties and attorney's fees.
Defendant alleges two assignments of error on the part of the trial court: (1) that the trial court erred in applying the "Extraterritorial Coverage" provision of La.R.S. 23:1035.1(1), which would allow plaintiff to recover under the Louisiana Workmen's Compensation Act; and (2) that the trial court erred in failing to set aside the preliminary judgment rendered on behalf of *1053 plaintiff. Plaintiff, in answer to the appeal, asks that the judgment be modified to award penalties and attorney's fees.

APPLICABILITY OF LOUISIANA LAW
The first question for disposition is whether the workmen's compensation claim in this case should be determined according to the law of Louisiana or whether the compensation law of Mississippi applies.
This issue presents an initial interpretation of a 1975 amendment to the Louisiana Workmen's Compensation Law entitled "Extraterritorial Coverage."
By Act 583 of 1975, the Louisiana Legislature enacted La.R.S. 23:1035.1(1), legislatively setting forth the circumstances under which our workmen's compensation laws should be given extraterritorial effect. La. R.S. 23:1035.1(1) provides:
"(1) If an employee, while working outside the territorial limits of this state, suffers an injury on account of which he, or in the event of his death, his dependents, would have been entitled to the benefits provided by this Chapter had such injury occurred within this state, such employee, or in the event of his death resulting from such injury, his dependents, shall be entitled to the benefits provided by this Chapter, provided that at the time of such injury
`(a) his employment is principally localized in this state, or
`(b) he is working under a contract of hire made in this state.'"
Prior to the 1975 legislation, the jurisprudence of this State was generally to the effect that recovery could not be allowed under the Louisiana Workmen's Compensation Act for disability occurring as a result of an accident occurring outside the state unless the contract of employment was entered into in the State of Louisiana. Forman v. Deaton, Inc., 347 So.2d 911 (La.App. 3rd Cir. 1977); Gray v. Decker, 229 So.2d 156 (La.App. 2nd Cir. 1969); Woodham v. Travelers Insurance Company, 161 So.2d 368 (La.App. 3rd Cir. 1964), writs denied, 246 La. 88, 163 So.2d 360; Sparks v. Pyburn Drilling Company, 276 So.2d 406 (La.App. 2nd Cir. 1973).
It appears that the 1975 legislation changes the jurisprudential rule by adding an additional ground for applying Louisiana's workmen's compensation laws to an employee's out-of-state injuries. We interpret this legislation to mean that Louisiana's workmen's compensation laws can be applied to injuries suffered by an employee while working outside the territorial limits of this state when (1) his employment is principally localized in this state, or (2) he is working under a contract of hire made in this state.
The trial court found that although "plaintiff was rehired in Texas as established by the records," he contracted to work in Louisiana, which would make this a Louisiana contract from its inception. He also concluded that the original contract of hire was reformed when plaintiff was transferred from Louisiana to Mississippi since plaintiff was a resident of Louisiana and Javeler had its principal office in Louisiana. We agree with the trial court that Louisiana law applies, but for different reasons.
The evidence establishes that plaintiff was employed by Javeler or its corporate predecessor as a dragline operator from 1971 until June 20, 1975. He had performed work in Florida, Georgia, Louisiana, and Texas. He terminated his employment on the latter referred date due to the fact that he felt that he wouldn't be able to continue to perform the strenuous duties of operating a dragline much longer due to his age. He wanted employment of a less strenuous nature. He worked at other employment in Texas from June 20, 1975, until his re-employment by Javeler in August, 1975.
*1054 Plaintiff was a Louisiana resident, at least from 1971 to the time of the accident on September 10, 1976. He resided in Jena, LaSalle Parish, Louisiana. He retained his home and telephone there, he voted in that parish, and he was covered by the homestead tax exemption. In the course of his employment, however he moved from job site to job site in various states.
The employer, Javeler, was a Florida corporation, but had moved its entire operations to Lafayette, Louisiana, in July of 1975. It was engaged in heavy construction with specialty in dragline excavation. It bid on such jobs in the states of Florida, Georgia, Mississippi, Louisiana, and Texas, and frequently secured them. Both before and after the time that plaintiff became a superintendent with Javeler, and continuing until the time of the accident, Javeler's center of operations was in Lafayette, Louisiana. All payroll checks were issued from there, and all construction reports were sent there.
During August of 1975, after numerous telephone conversations with plaintiff, Villere Cross and Leslie Cross, president and vice-president, respectively, of Javeler, went to plaintiff's temporary apartment in Texas City, Texas, to discuss in detail the employment of plaintiff as a superintendent for Javeler. This meeting entailed a description of the job title as well as a discussion of the responsibilities, authority, and duties of plaintiff in the capacity of superintendent. They offered plaintiff $350.00 per week as salary and $250.00 per month as living expenses. The plaintiff took one or two days to think about the offer and then met Leslie Cross in Freeport, Texas, near Texas City, where plaintiff told Cross that he accepted the offer to work as superintendent of Javeler and agreed to report for work on August 24, 1975. On the latter date he reported for work as superintendent at a Javeler job site in Corpus Christi, Texas, in order to wind up that operation. He continued his work there until October 27, 1975. He then proceeded to a Javeler job site near Baton Rouge, Louisiana, where he worked as superintendent until January 27, 1976, on which date he once again proceeded to a Javeler job site in Mississippi in the same capacity. He worked in Mississippi from the latter date until September 10, 1976, the date, of the accident.
We feel that the statutory phrase "employment is principally localized in this state" is quite broad. Under the rule that the Workmen's Compensation Act is to be liberally construed to provide benefits for injured employees, that phrase is sufficiently broad to cover plaintiff's situation. The 1975 amendment indicates the intention of the legislature to broaden workmen's compensation coverage on out of state accidents. Although when the plaintiff became superintendent with Javeler, there was an understanding that he would act in that capacity wherever Javeler had work going on, nevertheless, Javeler, at that time, was anticipating two Louisiana dragline operation jobs. One did not materialize. However, shortly after plaintiff assisted Javeler in concluding its Texas work, the operation was moved to a job site near Baton Rouge, Louisiana. The totality of the circumstances causes us to conclude that the plaintiff's employment is principally localized in Louisiana.
It is a coincidence of time and circumstance that at the time the accident occurred, plaintiff had worked two months in Texas, eight months in Mississippi, and three months in Louisiana. It appears to us that the mere quantity of time an employee works in any single locale where, as here, the job is such as to require moving to job sites in any of a number of areas, is not the controlling factor in a determination of the principal localization of employment, although, in some circumstances, it may be persuasive. The critical factor in this determination is the employee's base of operations, i. e., the center from which he works.
Both parties understood that the job would carry no permanent assignment to any particular state. The job in Mississippi *1055 was a temporary assignment. Mr. Stapleton's salary was paid from Lafayette. His work vehicles were registered and licensed in Louisiana. He filed weekly job reports to the Louisiana office. Mr. Stapleton was paid travelling expenses from his Louisiana home to the job site and he was given a living expense while away from his home. Each of these expenses were paid from the Louisiana office. Mr. Stapleton received his job assignments, whether in Mississippi, Louisiana, or Texas, from the Louisiana office. Under these facts and circumstances, we think it clear that plaintiff's employment was principally located in Louisiana.
We feel that the second alternate condition of the statute is also met. Based on the case of Williams v. Travelers Insurance Company of Hartford, Connecticut, 19 So.2d 586 (La.App. 1st Cir. 1944), plaintiff at the time of his accident was working under a contract of hire made in Louisiana. In Williams, the court dealt with an employee who was a resident of Louisiana. He was a pine lumber inspector whose job duties took him to many states. He had been hired by a Louisiana firm while he was in South Carolina. He then remained in South Carolina for training purposes. Thereafter, the employee worked in several states, but never in Louisiana. While performing his work duties in Illinois for his employer, he was accidentally fatally injured in an auto accident.
Our First Circuit ruled the Workmen's Compensation Act of Louisiana to be applicable and subsequently writs to the Supreme Court were refused on December 13, 1945.
The reasons for the Williams ruling were manifold. Citing Corpus Juris Secundum, the Court acknowledged that:
"a contract is considered as entered into at the place where the offer is accepted, or where the last act necessary to a meeting of the minds or to complete the contract is performed."
Further quoting, the Court observed:
"The place where a contract was made is to be determined in accordance with the intention of the parties."
With this in mind, the Court ruled that in determining what law to apply to a contract "both the place of performance and the place of making have to be taken into consideration," but "neither is conclusive, and the question rests on the intent of the parties as disclosed by the whole of the contract." (Italics added.)
In Williams, as in the present case, the contract was oral and unwritten. Therefore, the Court ruled that intent must be determined "from the circumstances surrounding the particular transaction . . ." Such factors as the nature of the work to be done, the place of performance, the domicile of the parties, etc., must be considered. McKane v. New Amsterdam Casualty Co., 199 So. 175 (La.App. Orl. Cir. 1941), writ denied, March 3, 1941.
In Williams, the principal office of the employer was in Louisiana. The employee considered Louisiana to be his home and place of residence. His salary, expenses, and insurance premiums were paid from the Louisiana office. Although he worked out of state, job reports were repeatedly made to the Louisiana office. With these factors in mind, Louisiana law was found applicable in Williams. These factors, and more, are likewise present in Mr. Stapleton's circumstances.
We feel that the intent of plaintiff and Javeler was to have the oral contract considered as having been entered into in this state. Javeler, the employer, does not contest this conclusion. Originally, in 1971, Javeler hired plaintiff while both parties were physically within Louisiana. In 1975, when Mr. Stapleton left Javeler for a brief two months, Javeler continuously attempted to keep him as an employee. These repeated negotiations began almost the moment *1056 Mr. Stapleton quit work. When Mr. Stapleton was finally rehired, one of the reasons was to undertake two dragline assignments in Louisiana. In Mr. Stapleton's words, "We were concentrating on Louisiana at that time." Upon being rehired, he returned shortly thereafter to Louisiana to undertake his work. He never returned to Texas for work purposes. The fact that plaintiff and the two Cross brothers were in Texas when they finalized the employment relationship is merely a coincidence of time and circumstance also.
For the above reasons, we conclude therefore that Louisiana's Workmen's Compensation Law is applicable in this case.

PRELIMINARY JUDGMENT
La.R.S. 23:1315, among other things, provides that the adverse party must answer the workmen's compensation petition within ten days after service. La. R.S. 23:1316 provides for a preliminary judgment if answer is not filed timely. In this case, the citation, on the Clerk of Court's form, provided for an answer to be filed within fifteen days. After the statutory ten day period, defendant had not answered, hence plaintiff moved for and was granted, among other things, a preliminary judgment for specified weekly compensation in addition to statutory penalties and attorney's fees of $750.00. Defendant contends that equity at least nullifies the preliminary judgment, because it should be able to rely upon the citation issued by the Clerk which incorrectly stated the legal delays. Our review of the record satisfies us that defendant was cognizant of the statutory ten day requirement and did not in fact rely upon the inaccurate statement on the citation. We therefore conclude that the preliminary judgment could be granted, and we therefore affirm it in all respects, except the portion of same which grants penalties and attorney's fees. La.R.S. 23:1316 allows only compensation payments untila hearing on the merits is had. It does not provide for the granting of attorney's fees. See Bickford v. Lutz, 339 So.2d 1268 (La.App. 1st Cir. 1976).

ATTORNEY FEES ON THE MERITS
Defendant paid plaintiff weekly compensation benefits through February 14, 1977. Compensation was then discontinued based upon two reports of Dr. R. J. Beurlot, Jr., an orthopedic surgeon, who had examined plaintiff on February 3, 1977. The first report, in narrative form, indicates that plaintiff "has reverted to his pre-injury state." The second report a "Standard Form for Surgeon's Report" showed that plaintiff was able to resume regular work on February 3, 1977.
The trial judge did not grant penalties or attorney's fees after hearing this case on the merits. He did find that plaintiff was totally and permanently disabled under the compensation act based correctly on a preponderance of medical evidence. At the time that compensation was discontinued there was a medical dispute concerning plaintiff's ability to return to work. Such being the case, plaintiff was not arbitrary in its actions, and penalties and attorney's fees will be denied. Guillory v. Hartford Accident and Indemnity Company, 168 So.2d 360 (La.App. 3rd Cir. 1964), writ refused 247 La. 248, 170 So.2d 508; Johnson v. United States Fidelity and Guaranty Company, 276 So.2d 735 (La.App. 3rd Cir. 1973).
For the above and foregoing reasons the portion of the preliminary judgment which allowed penalties and attorney's fees is reversed, but the preliminary judgment is otherwise affirmed. The judgment on the merits is affirmed.
Appellate costs are assessed one-fourth to plaintiff-appellee, and three-fourths to defendant-appellant.
AFFIRMED, AS AMENDED.
CUTRER, Judge, dissenting.
In 1975, the Legislature adopted the "Extraterritorial Coverage" statute setting up two criteria, either of which would bring an employee who was an out-of-state accident victim under the provisions of the Louisiana *1057 Workmen's Compensation Act. These two provisions are:
(a) His employment is principally localized in this state, or
(b) He is working under a contract made in this state.
I respectfully dissent as to the majority's construction, interpretation and application of these two criteria.

WHETHER HIS EMPLOYMENT IS PRINCIPALLY LOCALIZED IN THIS STATE
The majority concluded that the "totality of the circumstances" must be considered in order to conclude whether the employee's employment was principally localized in this state. They further pointed out that the "critical factor in this determination is the employee's base of operations, i. e., the center from which he works." They relied heavily on the fact that the principal office of the employer was located in the State of Louisiana and from which office all business expenses were paid, including salaries, reports were received in the Louisiana office from jobs that may be in operation outside the State of Louisiana, and the vehicles used in the operations were registered and licensed in the State of Louisiana. It was under those circumstances that the majority concluded that the plaintiff's employment was principally located in Louisiana. With this conclusion I disagree.
If the Legislature would have intended that the domicile of the employee and/or the domicile of the principal office of the employer would be the basis for granting extraterritorial effect to our compensation laws, it could have easily so provided. It chose not to use those criteria as a basis. The statute, in effect, provides that if the employee's employment is principally localized in this state, then our compensation law applies. Webster's Third New International Dictionary (1961 Edition) defines the term "employment" as the "activity in which one engages and employs his time and energies." The statute uses the word "his" employment, referring to the employee's (plaintiff's) employment. The words "his employment is principally localized in this state" means that the employee's duties of employment were performed primarily within the State of Louisiana.
In this case, plaintiff was engaged in the activity of supervising Javeler's operations wherever they might be located. The record indicates that after plaintiff was hired by Javeler on August 24, 1975, he worked in Texas through October 27, 1975. Plaintiff then moved to the next job near Baton Rouge where he worked from October 29, 1975, through January 27, 1976. Plaintiff was then transferred to the job site near Rolling Fork, Mississippi, where he worked from January 29, 1976, until the date of his accident on September 10, 1976. Considering the employment in the various states, plaintiff only worked for approximately three months in the State of Louisiana while working for a total of approximately nine and one-half months in the States of Texas and Mississippi. I conclude that plaintiff's employment was not principally localized in this state. Therefore, this requirement of the "Extraterritorial Coverage" act is not met.

WHETHER HE WAS WORKING UNDER A CONTRACT MADE IN THIS STATE
In answer to this second question the majority based its conclusion upon the cases of Williams v. Travelers Insurance Company of Hartford, Conn., 19 So.2d 586 (La. App. 1st Cir. 1944), and McKane v. New Amsterdam Casualty Company, 199 So. 175 (La.App. Orl. Cir. 1941), writ denied March 3, 1941, holding that the contract in the case at hand was made in Louisiana. In its determination of whether this was a Louisiana contract, the majority opinion, citing Williams and McKane, concluded that the court must consider (1) the place of performance, (2) the place of making, (3) the *1058 domicile of the parties, and (4) other circumstances surrounding the transaction.
I strongly disagree with the conclusion that all of the above enumerated circumstances are to be used in deciding this issue when the evidence clearly shows where the contract of hire was consummated.
The evidence reveals that Villere Cross and Leslie Cross, President and Vice President, respectively, of Javeler, went to the plaintiff's apartment in Texas City, Texas, to discuss the employment of the plaintiff as a superintendent for Javeler. They discussed responsibilities, authority, and duties of the plaintiff in the capacity as superintendent. The weekly salary and living expenses were agreed to. After thinking it over for a couple of days, the plaintiff met Leslie Cross in Freeport, Texas, and accepted the offer that had been made in Texas City. He reported for work a short time later in Texas. The offer was made, the offer was accepted, and there was a complete meeting of the minds by both parties, and thus the contract was consummated in the State of Texas.
It should be pointed out that the Williams and McKane decisions were rendered long before the adoption of the "Extraterritorial Coverage" statute in question. If the Legislature had intended that the factors set out in Williams and McKane should be considered by the court in its determination of the place where the contract was made, it could have easily done so. The statute does not reflect that any such factors are to be considered. The statute very plainly provides that the issue is whether "he is working under a contract of hire made in this state". In this case, the contract of hire was clearly made in Texas.
The Legislature, in adopting the "Extraterritorial Coverage" statute, set out in clear and concise language the conditions under which an out-of-state accident victim could come under the Louisiana Compensation Law. It set up two definable guidelines for the benefit of employees, employers, insurers and other interested parties in order for them to determine what compensation law applied to a workman injured out of state. The majority opinion, by making the "totality of the circumstances" the basis for interpretation of these two statutory criteria in each case, places these parties in an uncertain position.
I would conclude that the Workmen's Compensation Law of the State of Louisiana does not apply in this case.
CULPEPPER, J., concurs.